IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**LIBERTY INSURANCE UNDERWRITERS, INC.,**

   *Plaintiff,*

vs.               Civil Action No. 2:15-cv-11013

**R. MICHAEL MARTIN, individually; R. MICHAEL MARTIN d/b/a R. Michael Martin & Associates; CHARLES ADKINS; TIFFANY ADKINS; TOM ADKINS; ROGER D. BARKER; THERESA BROWN; CANDACE A. CARRINGTON; CHARLES D. CARRINGTON; JEANNIE DONNELLAN; ASHLEY JELINEK DUNCAN; SHIRLEY GRIMMETT; MARY GAIL HUNDLEY; ROBERT KARDOS; STEPHANIE KARDOS; VICKI MARTIN-RHODES; HENRIETTA MAYNARD; MELODY MAYNARD; BERTHA McCORMICK; ANTHONY McCORKLE; LUEGENIA PANNELL; BRANDY PAULEY; STEPHEN PERRY; KATHY RAMSEY; HURLEY RANDOLPH; SARA ROGERS; SUSAN SCOTT; FLORENCE HUDNALL STANLEY; LUCAS SWISHER; and JAMES VANCE,**

   *Defendants.*

**COMPLAINT FOR RESCISSION AND/OR DECLARATORY JUDGMENT**

  COMES NOW Plaintiff, Liberty Insurance Underwriters, Inc. ["LIU"], by and through its attorneys, and for its Complaint for Rescission and/or Declaratory Judgment, as follows:

<u>Jurisdiction, Venue, and Nature of Case</u>

  1.  This is an action instituted pursuant to 28 U.S.C. § 2201 regarding declaratory judgments and pursuant to 28 U.S.C. § 1332 regarding diversity jurisdiction.

2. The questions to be decided are whether a professional liability policy issued to Defendants, R. Michael Martin, individually ["Mr. Martin"], and R. Michael Martin d/b/a R. Michael Martin & Associates ["Martin Firm"] on August 21, 2014, may be rescinded and declared void *ab initio* due to material misrepresentations on renewal applications by Mr. Martin and/or the Martin Firm or, in the alternative, whether any coverage exists under the professional liability policy issued by LIU to Mr. Martin and the Martin Firm for numerous claims and/or potential claims by Defendants, Charles Adkins, Tiffany Adkins, Tom Adkins, Roger D. Barker, Theresa Brown, Candace A. Carrington, Charles D. Carrington, Jeannie Donnellan, Ashley Jelinek Duncan, Shirley Grimmett, Mary Gail Hundley, Robert Kardos, Stephanie Kardos, Vicki Martin-Rhodes, Henrietta Maynard, Melody Maynard, Bertha McCormick, Anthony McCorkle, Brandy Pauley, Luegenia Pannell, Stephen Perry, Kathy Ramsey, Hurley Randolph, Sara Rogers, Susan M. Scott, Florence Hudnall Stanley, Lucas Swisher, and James Vance ["Claimants"].

3. There is complete diversity and the amount in controversy exceeds the jurisdictional threshold of Seventy Five Thousand Dollars ($75,000.00).

Parties, Claims, and Complaints

4. LIU is an Illinois corporation with its principal place of business in Massachusetts.

5. Mr. Martin is a resident of Kanawha County, West Virginia.

6. The Martin Firm was located in Kanawha County, West Virginia.

7. Defendants, Charles Adkins, Tiffany Adkins, Tom Adkins, Roger D. Barker, Theresa Brown, Candace A. Carrington, Charles D. Carrington, Jeannie Donnellan, Ashley Jelinek Duncan, Shirley Grimmett, Mary Gail Hundley, Robert Kardos, Stephanie Kardos, Vicki Martin-Rhodes, Henrietta Maynard, Melody Maynard, Bertha McCormick, Anthony McCorkle,

Brandy Pauley, Luegenia Pannell, Stephen Perry, Kathy Ramsey, Hurley Randolph, Sara Rogers, Susan M. Scott, Florence Hudnall Stanley, Lucas Swisher, and James Vance have filed suits and/or claims against Mr. Martin and/or the Martin Firm and are residents of West Virginia.

<u>Lawyers Professional Liability Policy</u>

8. The Martin Firm is insured under a Lawyers Professional Liability Policy issued by LIU for the period covering August 21, 2014, to August 21, 2015 ["Martin Policy"]. [Exhibit 1]

9. On August 21, 2014, LIUI renewed the Martin Policy based upon information provided by Mr. Martin in a renewal application as follows:

> **4. Claims, Incidents & Disciplinary Actions**
> After inquiry, have any of the following occurred during your expiring policy:
> A. Disciplinary actions against any lawyer (including disbarment/ reprimand, censure or sanction)?  ☐ Yes ☒ No
> B. Claims?  ☐ Yes ☒ No
> C. Incidents or circumstances that could result in a claim?  ☐ Yes ☒ No
> D. Changes in the status, amounts reserved and/or amounts paid for claims, incidents or circumstances which were open as of the inception date of the expiring policy?  ☐ Yes ☒ No
> If yes to A, please explain separately. If yes to B., C. or D. please complete a **Claims Supplemental Application** for <u>each</u> instance.

[Exhibit 2]

10. Previously, in a renewal application dated August 5, 2013, Mr. Martin provided the following information:

> **4. Claims, Incidents & Disciplinary Actions**
> After inquiry, have any of the following occurred during your expiring policy:
> A. Disciplinary actions against any lawyer (including disbarment/ reprimand, censure or sanction)?  ☐ Yes ☒ No
> B. Claims?  ☐ Yes ☒ No
> C. Incidents or circumstances that could result in a claim?  ☐ Yes ☒ No
> D. Changes in the status, amounts reserved and/or amounts paid for claims, incidents or circumstances which were open as of the inception date of the expiring policy?  ☐ Yes ☒ No
> If yes to A, please explain separately. If yes to B., C. or D. please complete a **Claims Supplemental Application** for <u>each</u> instance.

[Exhibit 3]

11. Mr. Martin failed to disclose, however, on either the 2013 or 2014 renewal applications, both signed by him, a large number of disciplinary complaints filed against him,

3

which ultimately resulted in Mr. Martin's surrendering his law license on January 14, 2015, as follows:

- Disciplinary complaint by Charles F. Runion filed on June 11, 2012, complaining about Mr. Martin's failure to pay over settlement proceeds to Mr. Runion and to satisfy a workers' compensation lien also to be paid out of those settlement proceeds

- Disciplinary complaint by David S. Newcomer filed on July 26, 2012, complaining about Mr. Martin's failure to prosecute suit filed by Mr. Martin on Mr. Newcomer's behalf resulting in its dismissal

- Disciplinary complaint by Kit Meade filed on February 25, 2013, complaining about Mr. Martin's failure to pay over settlement proceeds to Mr. Meade and to satisfy a Medicare lien also to be paid out of those settlement proceeds

- Disciplinary complaint by Ronald & Lori Copley filed on March 15, 2013, complaining about Mr. Martin's failure to pay over settlement proceeds to the Copleys and to satisfy health care provider liens to be paid out of those settlement proceeds

- Disciplinary complaint by Lori A. Naylor filed on May 9, 2013, complaining about Mr. Martin's failure to pay over settlement proceeds to Ms. Naylor and to otherwise finalize settlement of civil action

- Disciplinary complaint by Christy L. Scott filed on May 15, 2013, complaining about Mr. Martin's failure to pay over settlement proceeds to Ms. Scott and to satisfy health care provider liens to be paid out of those settlement proceeds

- Disciplinary complaint by Lyndall V. Mills Fields filed on August 16, 2013, complaining about Mr. Martin's delay in paying over her portion of settlement proceeds, apparently as a result of his negotiation of a workers' compensation lien

- Disciplinary complaint by Deborah L. Hudnall filed on September 20, 2013, complaining about Mr. Martin's delay in paying over her portion of settlement proceeds, apparently as a result of his negotiation of Medicaid liens

- Disciplinary complaint by Alica S. Kincaid filed on November 19, 2013, complaining about Mr. Martin's delay in the prosecution and settlement of her automobile accident case

- Disciplinary complaint by Betty L. Sydenstricker filed on November 20, 2013, complaining about Mr. Martin's delay in paying over her portion of settlement

proceeds, which he claimed was delayed by negotiating a non-existent Medicare lien

- Disciplinary complaint by Kelly D. Perkins filed on January 27, 2014, complaining about Mr. Martin's delay in paying over her portion of settlement proceeds, apparently as a result of his negotiation of health care provider liens

- Disciplinary complaint by Terese L. Holmes filed on May 12, 2014, complaining about Mr. Martin's delaying in paying and/or settling with her health care providers and in paying over her portion of settlement proceeds

- Disciplinary complaint by Carl E. Hodges filed on May 19, 2014, complaining about Mr. Martin's delay in paying over his portion of settlement proceeds and otherwise timely responding to his inquiries regarding the status of his case

- Disciplinary complaint by Terry L. and Cathy M. Rhodes filed on July 2, 2014, complaining about Mr. Martin's paying over only $5,000 of $65,000 in settlement proceeds

- Disciplinary complaint by Elizabeth A. Long filed on July 14, 2014, complaining about Mr. Martin's failure to time pay over a portion of her settlement proceeds

- Disciplinary complaint by Bertha J. McCormick filed on July 17, 2014, complaining about Mr. Martin's failure to timely pay over her portion of $32,500 in settlement proceeds

- Disciplinary complaint by Albert R. Burns, Jr., filed on July 25, 2014, complaining about Mr. Martin's failure to pay his health care providers and to timely pay over his portion of settlement proceeds

- Disciplinary complaint by Virginia D. Newsome filed on August 12, 2014, complaining about Mr. Martin's alleged forgery of a $25,000 settlement check, failure to pay her creditors, and failure to timely pay over her portion of settlement proceeds

- Disciplinary complaint by Kathy A. Ramsey filed on August 21, 2014, complaining about Mr. Martin's failure to pay over her portion of settlement proceeds

- Disciplinary complaint by Leah D. Johnson filed on August 21, 2014, complaining about Mr. Martin's failure to timely pay over the remaining portion of settlement proceeds

- Disciplinary complaint by Jesse M. Denny filed on August 21, 2014, complaining about Mr. Martin's failure to pay over his portion of settlement proceeds

- Disciplinary complaint by Timmy Hurley filed on August 21, 2014, complaining about Mr. Martin's failure to timely pay over his portion of settlement proceeds

- Disciplinary complaint by Luegenia N. Pannel filed on August 21, 2014, complaining about Mr. Martin's failure to pay her health care providers and to pay portion of settlement proceeds

12. Not only had these 23 disciplinary complaints been filed against Mr. Martin prior to his 2013 and/or 2014 renewal applications, Mr. Martin had filed verified answers to many of these complaints, but disclosed none of them on his 2013 and/or 2014 renewal applications.

13. In addition to these 23 disciplinary complaints that should have been disclosed on Mr. Martin's 2013 and/or 2014 renewal applications, Mr. Martin had also received a demand letter, dated July 13, 2014, from West Virginia attorney, J. Patrick L. Stephens, stating as follows:

> Dear Mr. Martin:
>
> Attached to this letter, please find a Complaint that I have drafted, but not filed, on behalf of Sara Rogers. *See Exhibit A*. Please review the Complaint. It appears that you filed a complaint on her behalf for an automobile accident that occurred on August 24, 2007, but failed to serve this complaint on the defendant in a timely manner.
>
> Ms. Rogers' medical expenses from this August 24, 2007 automobile accident total to $26,007.55. *See* Table of Medical Expenses, attached hereto as *Exhibit B*. If possible, my client would like to resolve her claim against you prior to filing suit. To that end, with special damages exceeding $26,000.00, Ms. Rogers demands the sum of $150,000.00 for a full and final settlement of this matter. We ask that you turn this demand over to your malpractice carrier. This demand is offered in exchange for a full release of Ms. Rogers' claims against you and your practice, and will remain open for 15 business days.

[Exhibit 4]

14. In addition to the 23 disciplinary complaints that should have been disclosed on Mr. Martin's 2013 and/or 2014 renewal applications, and the demand letter dated July 13, 2014, that should have been disclosed on Mr. Martin's 2014 renewal application, 21 other disciplinary complaints were filed after Mr. Martin's most recent renewal application of August 21, 2014:

- Disciplinary complaint by Everett W. Necessary filed on December 31, 2014, complaining about Mr. Martin's delay of over a year in paying over his portion of

settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Tony M. Keesee filed on November 26, 2014, complaining about Mr. Martin's delay in paying over his portion of settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Bobbi Jo Miller filed on December 29, 2014, complaining about Mr. Martin's failure to file suit in a personal injury matter on her behalf, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Mary G. Hundley filed on December 29, 2014, complaining about Mr. Martin's failing to pay over her portion of settlement proceeds in the amount of $190,000, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Susan Scott filed on January 26, 2015, complaining about Mr. Martin's failure to pay over her portion of settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Bobbie D. Racer filed on January 21, 2015, complaining about Mr. Martin's failure to pay over her portion of $20,000 in settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Adonna F. Null filed on January 26, 2015, complaining about Mr. Martin's failure to respond to Ms. Null's inquiries regarding the status of her case, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Candace A. Carrington filed on December 30, 2014, complaining about Mr. Martin's failure to pay over her portion of settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Laura J. Pinkerman filed on December 24, 2014, complaining that Mr. Martin failed to prosecute a suit filed by him on her behalf, resulting in its dismissal, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Anthony I. McCorkle filed on November 12, 2014, complaining about Mr. Martin's failure to respond regarding the status of Mr.

McCorkle's case, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Jeannie M. Donnellan filed on November 18, 2014, complaining about Mr. Martin's failure to pay over her portion of settlement proceeds and to pay her health care providers, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Charles D. Carrington filed on January 5, 2015, complaining about Mr. Martin's failure to pay over his portion of settlement proceedings, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Billy D. Vaughn filed on January 7, 2015, complaining about Mr. Martin's failure to pay over his portion of settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Roger D. Baker filed on January 8, 2015, complaining about Mr. Martin's failure to pay over some of his portion of settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Steven P. Stanley filed on January 9, 2015, complaining about Mr. Martin's failure to pay over some of his portion of settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Tiffney L. Adkins filed on January 9, 2015, complaining about Mr. Martin's forging her name on a settlement check and wrongfully withholding all but $1,000 of $12,000 in settlement proceedings, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Vickie L. Martin filed on January 9, 2015, complaining about Mr. Martin's forging her name on a settlement check and wrongfully withholding all but $1,000 of $18,000 in settlement proceedings, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Susan M. Scott filed on December 9, 2014, complaining about Mr. Martin's settling her case without her approval and then paying over only a portion of her share of the settlement proceeds, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Deonne L. Bowen filed on November 18, 2014, complaining about Mr. Martin's failure to prosecute a suit on her behalf, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Charles I. Adkins filed on October 20, 2014, complaining about Mr. Martin's delay in paying over his portion of settlement

proceeds, apparently delayed by negotiating with health care providers, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

- Disciplinary complaint by Drema D. Crosier filed on October 8, 2014, complaining about Mr. Martin's failure to pay over $500 in settlement proceeds to her and to pay her medical providers, which was dismissed pursuant to Mr. Martin's disbarment of January 14, 2015

15. When Mr. Martin signed his renewal applications in 2013 and 2014 on behalf of himself and the Martin Firm, he acknowledged as follows:

> The undersigned . . . hereby . . . declares after diligent inquiry that the above statements and particulars are true and that no material facts have been suppressed or misstated . . . this application will be the basis of the contract if a policy is issued . . . all written statements and material furnished to Liberty Insurance Underwriters, Inc. in conjunction with this application are hereby incorporated by reference into this application and made a part hereof; and . . . acknowledges that, in the event Liberty Insurance Underwriters, Inc. issues a policy, (1) Liberty Insurance Underwriters, Inc. in providing coverage will have relied upon, as representations, the declarations and statements which are contained in or attached to or incorporated into the policy . . . .

[Exhibit 2 and Exhibit 3]

16. Although the Martin Policy provides, "If a **disciplinary proceeding** is brought against **you, we** will reimburse reasonable costs that **you** incur in the defense of such matters, provided **you** do not admit all or any part of the allegation. Any reimbursement made pursuant to this sub-section will be in addition to the limits of liability set forth in the Declarations," Mr. Martin did not afford himself of this "Special Benefits" coverage provided; rather, Mr. Martin responded to many if not most of the disciplinary complaints, most of which effectively alleged that Mr. Martin had wrongfully converted his clients' funds, and disclosed none of these complaints to LIU.

17. Not only did Mr. Martin fail to disclose the claim for damages he received from Mr. Stephens on behalf of Ms. Rogers and the multiple pending disciplinary complaints against

him on either his 2013 or 2014 renewal applications, he failed to disclose the multiple circumstances arising from those complaints that created "Incidents or circumstances that could result in a claim" as elicited in those renewal applications.

18. The Martin Policy provides a limit of liability of $1,000,000.00 for each claim and $2,000,000.00 in the aggregate, with a $5,000.00 per claim Deductible, applicable to damages and claim expenses as defined in the Martin Policy. [Exhibit 1]

19. The insuring clause of the Martin Policy provides:

> **We** agree to pay on **your** behalf all **damages** in excess of the deductible amount and up to the limits of liability stated in the Declarations that **you** become legally obligated to pay, provided such **damages** . . . result from **claims** . . . first made against **you** during the **policy period** or any extended reporting period, if applicable, and . . . reported to **us** in writing; and . . . **are caused by a wrongful act which takes place before or during the policy period** . . . .

[Exhibit 1]

20. The term "claim" is defined in the Martin Policy as "a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings against **you**, or a **disciplinary proceeding**." [Exhibit 1]

21. The term "damages" is defined in the Martin Policy as:

> [A] monetary judgment or settlement, **but does not include** fines or statutory penalties, sanctions whether imposed by law or otherwise, any other amount awarded in any **disciplinary proceeding**, <u>the return of or restitution of legal fees</u>, costs and expenses, punitive or exemplary damages, the multiplied portion of multiplied **damages**, amounts for which **you** are not financially liable or which are without legal recourse to **you** or matters which may be deemed uninsurable under applicable law.

[Exhibit 1] (emphasis supplied)

22. The term "professional legal services" is defined in the Martin Policy as "legal services and activities performed for others as . . . a lawyer . . . . Services performed by **you** in a

lawyer-client relationship on behalf of one or more clients shall be deemed for the purpose of this section to be professional services in **your** capacity as a lawyer . . . ." [Exhibit 1]

23. The term "wrongful act" is defined in the Martin Policy as "any actual or alleged act, error, omission or **personal injury** which arises out of the rendering or failure to render **professional legal services**." [Exhibit 1]

24. Thus, any "claim" for monetary damages against Mr. Martin caused by a "wrongful act" arising out of his "professional legal services" and reported during the policy period or extended policy period would be covered unless otherwise excluded by the policy.

25. The Martin Policy also provides:

**Fraudulent, Criminal, Malicious, Deliberately Wrongful Acts, or Omissions.** This policy does not apply to any judgment or final adjudication based upon, arising out of or in any way related to any dishonest, fraudulent, criminal, malicious or deliberately wrongful acts or omissions committed by **you**. **We** will defend allegations of the foregoing acts or omissions until the time they are finally adjudicated or admitted by **you**.

[Exhibit 1]

26. Accordingly, to the extent that any judgment or final adjudication is based upon, arises out of, or in any way is related to any dishonest, fraudulent, criminal, malicious or deliberately wrongful acts or omissions committed by Mr. Martin and/or the Martin Firm, Mr. Martin and/or the Martin Firm has the right to a defense until they are finally adjudicated or admitted by Mr. Martin and/or the Martin Firm, but neither Mr. Martin or the Martin Firm has any right to indemnification for such judgment or final adjudication.

27. The Martin Policy also provides:

**Limits of Liability - Each Claim.** The most **we** will pay for **damages** and **claim expenses** for each **claim** is specified as "each claim" in the limits of liability

section of the Declarations and is subject always to the amount specified as "aggregate" in the limits of liability section of the Declarations.

[Exhibit 1]

28.     Accordingly, the most LIU is liable to pay for damages and claim expenses for any covered claim by any of the Claimants is the amounts specified for "each claim" in the limits of liability section of the Declarations and is subject to the amount specified as "aggregate" in the limits of liability section of the Declarations.

29.     The Martin Policy also provides:

**Deductible.**  The deductible amount stated in the Declarations shall apply to all **damages** and **claim expenses** for each and every **claim**, and must be paid by **you** as a condition precedent to payment of any loss by **us**. . . . **You** must pay such deductible amount within thirty (30) days of **our** written request therefor regardless of the number of **claims** made under this policy. . . .

[Exhibit 1]

30.     Accordingly, LIU is not liable for the payment of any covered loss unless and until Mr. Martin and/or the Martin Firm pays the applicable deductible within 30 days of LIU's written request for payment of the applicable deductible regardless of the number of claims made under the Martin Policy.

31.     The Martin Policy also provides:

**Notice of Claims.**  **You** must give **us** written notice of any **claim(s)** or potential **claim(s)** made against **you** as soon as practicable but not later than sixty (60) days after expiration of the **policy period** or an extended reporting period, if applicable. In the event suit is brought against **you**, **you** must immediately forward to **us** every demand, notice, summons, complaint or other process received directly or by **your** representatives.  Written notice of any claim against **you**, as well as of each demand on or action against **us**, must be delivered to **us** addressed as follows: Liberty Insurance Underwriters, Inc., 55 Water Street, 18th floor, New York, NY 10041, Attention: Claims Division.  All notices to **us** must be in writing.

[Exhibit 1]

32. Accordingly, to the extent that Mr. Martin and/or the Martin Firm failed to provide LIU with written notice of any claim or potential claim by the Claimants as soon as practicable but not later than 60 days after the expiration of any previous policy period, there would be no coverage for such claim or potential claim under the Martin Policy.

33. The Martin Policy also provides:

> **Discovery Clause.** Should **you** first become aware during the **policy period** or any extended reporting period, if applicable, of a **wrongful act** for which coverage is otherwise provided hereunder, and should **you** during the **policy period** or any extended reporting period, if applicable, give written notice to **us** of . . . the specific **wrongful act** . . . the injury or **damage** which has resulted or may result from such **wrongful act** . . . and the circumstances by which **you** first became aware of such **wrongful act**, then any **claim** that may subsequently be made against **you** arising out of such **wrongful act** shall be deemed for the purposes of this insurance to have been made during the **policy period** or any extended reporting period, if applicable.

[Exhibit 1]

34. Accordingly, to the extent that Mr. Martin and/or the Martin Firm first became aware during a policy period of a wrongful act for which coverage was otherwise provided and reported the same during that policy period, there would have been coverage for that wrongful act when a claim was made during a subsequent policy period, but if Mr. Martin and/or the Martin Firm failed to report said wrongful act during a previous policy period despite first becoming aware of it, there is no coverage for such claim under the present policy period.

35. The Martin Policy provides:

> **Application.** By acceptance of this policy, **you** agree that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon such representations and that this policy embodies all agreements existing between **you** and **us**, or any of **our** agents, relating to this insurance.

[Exhibit 1]

36. Accordingly, when Mr. Martin and/or the Martin Firm stated that he/they had no "Disciplinary actions" or "Claims" pending against him/them on his/their 2013 and 2014 renewal applications, he/they was/were advised that those representations were material to LIU's underwriting of the renewal policy and that LIU was relying upon those representations in determining whether to renew coverage.

37. With respect to cancellation, the Martin Policy provides:

> **Cancellation and Nonrenewal.** The following cancellation and nonrenewal procedures apply to this policy . . . **We** may cancel this policy by mailing to the **named insured** written notice of cancellation at least . . . thirty (30) days prior to the effective date of cancellation if **we** cancel for any other reasons . . . . If **we** decide not to renew this policy, **we** shall mail written notice to the **named insured** not less than thirty (30) days prior to expiration of the policy.

[Exhibit 1]

38. Had Mr. Martin and/or the Marin Firm disclosed the multiple claims and/or disciplinary proceedings pending the 2013 and 2014 renewal applications, LIU would have non-renewed the policy.

39. LIU was deprived of that opportunity, however, when Mr. Martin and/or the Martin Firm did not answer the renewal application questions truthfully.

40. W. Va. Code § 33-6-7 provides:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
>     (a)    Fraudulent; or
>
>     (b)    Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

41. Accordingly, an insurer may properly rescind a policy based upon (1) an application containing an intentional error or omission; (2) an application containing an error or omission, even if unintentional, that is material to the risk; or (3) an application containing an error or omission, even if unintentional, that had it been known, the insurer would not have issued the policy under the same or any terms.

42. Like any other contract, an insurance policy procured by fraud is voidable and may be rescinded.

43. Accordingly, by letter dated July 7, 2015, based upon Mr. Martin's material misrepresentations in his 2013 and 2014 renewal applications, LIU rescinded Mr. Martin's policy and refunded his premium in the amount of $5,663.00. [Exhibit 5]

44. The rescission letter and premium refunded were hand-delivered to Mr. Martin's residence on July 7, 2015.

## COUNT I -- RESCISSION

45. LIU reasserts by reference the statements and allegations contained in paragraphs 1 through 44 of its Complaint for Rescission and/or Declaratory Judgment.

46. Mr. Martin and/or the Martin Firm knowingly made fraudulent misrepresentations on the 2013 and 2014 renewal applications upon which LIU reasonably relied in renewing the Martin Policy in 2013 and 2014 to LIU's detriment which warrants rescission of the Martin Policy and a declaration that the Martin policy is void *ab initio*.

47.     The 2013 and 2014 renewal applications by Mr. Martin and the Martin Firm contained misrepresentations, omissions, concealments of facts, and/or incorrect statements that were material to the acceptance of the risk or to the hazard assumed by LIU in renewing the Martin Policy which warrants rescission of the Martin Policy and a declaration that the Martin policy is void *ab initio*.

48.     LIU in good faith would not have issued the Martin Policy or would not have issued the Martin Policy in as large an amount or would not have provided coverage with respect to the claims by the Claimants in this matter or any other claimant for which the underlying wrongful act first became known to Mr. Martin and/or the Martin Firm but was not disclosed as provided in the Martin Policy if the true facts had been made known to LIU as required by the renewal applications and otherwise which warrants rescission of the Martin Policy and a declaration that the Martin policy is void *ab initio*.

## COUNT II – DECLARATORY RELIEF

49.     LIU reasserts by reference the statements and allegations contained in paragraphs 1 through 48 of its Complaint for Rescission and/or Declaratory Judgment.

50.     LIU seeks a declaratory judgment against Defendants that (a) it is not required under the subject policy to defend or indemnify Mr. Martin and/or the Martin Firm for any suit or claim for which Mr. Martin and/or the Martin Firm has not paid its $5,000 deductible; (b) it is not required under the subject policy to defend or indemnify Mr. Martin and/or the Martin Firm for any claim arising from a wrongful act which took place before the current policy period which was first known to Mr. Martin and/or the Martin Firm before the current policy period, but was not disclosed to LIU during any previous policy period in which the wrongful act first became

known to Mr. Martin and/or the Martin Firm and/or on any renewal application; (c) it is not required to defend and/or indemnify Mr. Martin and/or the Martin Firm for any claim or potential claim of which LIU was not provided written notice as soon as practicable but not later than 60 days after the expiration of any policy period; (d) it is not required under the subject policy to defend or indemnify Mr. Martin and/or the Martin Firm for any fine, statutory penalty, sanction, return of or restitution of legal fees, costs and expenses, punitive or exemplary damages, and/or other damages excluded from the term "damages" as set forth in the subject policy; (e) it is not required to indemnify Mr. Martin and/or the Martin Firm for any judgment or final adjudication based upon, arising out of, or in any way related to any dishonest, fraudulent, criminal, malicious, or deliberately wrongful acts or omissions committed by Mr. Martin and/or the Martin Firm; (f) it is not required to defend and/or indemnify Mr. Martin and/or the Martin Firm for any claim that does not involve "professional legal services" as that term is defined in the Martin Policy; (g) it is not required to defend and/or indemnify Mr. Martin and/or the Martin Firm for any claim that does not involve a "wrongful act" as that term is defined in the Martin Policy; and (h) it is not required to indemnify Mr. Martin and/or the Martin Firm for any covered claim in excess of policy limits of $1,000,000.00 for each claim and $2,000,000.00 in the aggregate.

## COUNT III – ATTORNEY FEES AND COSTS

51. LIU reasserts by reference the statements and allegations contained in paragraphs 1 through 50 of its Complaint for Rescission and/or Declaratory Judgment.

52. The United States Code permits a discretionary award of "[f]urther necessary or proper relief" following a favorable decision in a declaratory judgment action. 28 U.S.C. § 2202.

53. LIU submits that a discretionary award of attorney fees and costs in prosecuting this declaratory judgment action is appropriate.

WHEREFORE, Plaintiff, Liberty Insurance Underwriters, Inc., respectfully requests the following relief:

(a) Rescission of the subject policy to its effective date of August 21, 2014, with no obligation to defend or indemnify Mr. Martin or the Martin Firm for any claims under said policy and a declaration that the subject policy is void *ab initio*;

(b) In the alternative, a declaration that (i) it is not required under the subject policy to defend or indemnify Mr. Martin and/or the Martin Firm for any suit or claim for which Mr. Martin and/or the Martin Firm has not paid its $5,000 deductible; (ii) it is not required under the subject policy to defend or indemnify Mr. Martin and/or the Martin Firm for any claim arising from a wrongful act which took place before the current policy period which was first known to Mr. Martin and/or the Martin Firm before the current policy period, but was not disclosed to LIU during any previous policy period in which the wrongful act first became known to Mr. Martin and/or the Martin Firm and/or on any renewal application; (iii) it is not required to defend and/or indemnify Mr. Martin and/or the Martin Firm for any claim or potential claim of which LIU was not provided written notice as soon as practicable but not later than 60 days after the expiration of any policy period; (iv) it is not required under the subject policy to defend or indemnify Mr. Martin and/or the Martin Firm for any fine, statutory penalty, sanction, return of or restitution of legal fees, costs and expenses, punitive or exemplary damages, and/or other damages excluded from the term "damages" as set forth in the subject policy; (v) it is not required to indemnify Mr. Martin and/or the Martin Firm for any judgment or final adjudication based upon, arising out of, or in any way related to any dishonest, fraudulent, criminal, malicious, or deliberately wrongful acts or omissions committed by Mr. Martin and/or the Martin Firm; (vi) it is not required to defend and/or indemnify Mr. Martin and/or the Martin Firm for any claim that does not involve "professional legal services" as that term is defined in the Martin Policy; (vii) it is not required to defend and/or indemnify Mr. Martin and/or the Martin Firm for any claim that does not involve a "wrongful act" as that term is defined in the Martin Policy; and (viii) it is not required to indemnify Mr. Martin and/or the Martin Firm for any covered claim in excess of policy limits of $1,000,000.00 for each claim and $2,000,000.00 in the aggregate;

(c) An award of the reasonable attorney fees and costs incurred by LIU in prosecuting this declaratory judgment action; and

(d) An award of such other relief as the Court may deem appropriate.

**LIBERTY INSURANCE UNDERWRITERS, INC.**

By Counsel

/s/ Ancil G. Ramey
Ancil G. Ramey, Esq.
WV Bar No. 3013
Hannah C. Ramey, Esq.
WV Bar No. 7700
Steptoe & Johnson PLLC
P.O. Box 2195
Huntington, WV 25722-2195
Telephone (304) 526-8133
ancil.ramey@steptoe-johnson.com
hannah.ramey@steptoe-johnson.com