# EXHIBIT 6

## BEFORE THE LAWYER DISCIPLINARY BOARD
## STATE OF WEST VIRGINIA

In Re:   R. MICHAEL MARTIN, a member of                    Bar No.: 6928
         The West Virginia State Bar          I.D. No.: 14-01-257; 14-01-273;
                                                   14-01-354; 14-01-372; 14-01-383;
                                                   14-01-398; 14-01-414; 14-01-424;
                                                   14-01-445; 14-01-446; 14-01-449;
                                                   14-01-453; 14-01-473

## STATEMENT OF CHARGES

To:   R. Michael Martin, Esquire
      Post Office Box 11407
      Charleston, West Virginia 25339

**YOU ARE HEREBY** notified that a Hearing Panel Subcommittee of the Lawyer

Disciplinary Board will hold a hearing pursuant to Rules 3.3 through 3.16 of the Rules of

Disciplinary Procedure, upon the following charges against you:

1.      R. Michael Martin, Esquire (hereinafter "Respondent") is a lawyer practicing in

        Charleston, which is located in Kanawha County, West Virginia. Respondent, having

        passed the bar exam, was admitted to The West Virginia State Bar on October 2,

        1995. As such, Respondent is subject to the disciplinary jurisdiction of the Supreme

a00087825.WPD

Court of Appeals of West Virginia and its properly constituted Lawyer Disciplinary Board.[1]

## COUNT I
### I.D. No. 14-01-257
### Complaint of Teresa L. Holmes

2.     Complainant Teresa Holmes hired Respondent to represent her as a result of a car accident, which occurred on or about November 24, 2008.

3.     Ms. Holmes stated that in or about September 14, 2011, one of Respondent's staff told her that Respondent had settled her case. Complainant said she told the staff member that she did not understand how Respondent was able to settle the case since she was still seeing doctors.

4.     Complainant said she later met with Respondent on or about May 8, 2012, and explained her ongoing situation with unpaid medical bills. She indicated that at that time, Respondent told her send him the bills and he would take care of them. She stated that he also had her sign a release and told her that he would attempt to negotiate with the providers in order to get the bills reduced. Complainant said that Respondent offered her a check in the amount of Three Thousand Dollars

---

[1]Respondent is already facing a Statement of Charges (W.Va. Supreme Ct. No. 14-0687) which was filed on July 17, 2014, and is currently pending before a Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board. A hearing in that matter is scheduled for January 21 and January 22, 2015. The Statement of Charges in 14-0687 charged Respondent with multiple violations of Rules 1.3 [diligence]; 1.4(a)-(b) [communication];1.5(c) [fees]; 1,8(e) [conflicts of interest-prohibited transactions]; 1.15 [safekeeping property]; 3.2 [expediting litigation]; 8.1(b) [failure to respond to requests for information]; and 8.4(c)-(d) [misconduct -dishonesty, fraud, deceit, and misinformation and conduct prejudicial to the administration of justice] of the West Virginia Rules of Professional Conduct.

($3,000.00)[2] and that after all of the bills were paid, the case could be settled. Complainant requested a copy of the release, but she said Respondent stated that he would take care of that when she came back for the settlement.

5.    Upon information and belief, Respondent deposited a Full and Final settlement check in the amount of $23,751.92 from Safeco Insurance Companies on behalf of Ms. Holmes into his IOLTA Client Trust Account on or about September 20, 2011.[3]

6.    Upon information and belief, Respondent's subpoenaed bank records do not appear to reflect that he deducted his "attorney fee" from any settlement he obtained on behalf of Ms. Holmes.

7.    Upon information and belief, Respondent's subpoenaed bank records reflect that his apparent pattern and practice for deducting his "attorney's fee" from his "Client Trust Account" for deposit into his "General Account" and his other bank accounts is to employ the use of a telephone transfer. However, due to the manner in which the telephone transfer is reflected on his monthly statements, it is impossible to determine

---

[2]However, Respondent's bank records for his IOLTA Client Trust account indicate that he issued a check to Ms. Holmes dated May 8, 2012, in the amount of $11,000.00.

[3]By subpoena issued December 11, 2013, issued in regard to the complaints alleged in the first Statement of Charges and detailed in W.Va. Supreme Court No. 14-0687, the Office of Disciplinary Counsel subpoenaed Respondent's bank records for his IOLTA account, styled on his checks as his "Client Trust Account," and his Operating Account, styled on his checks as his "General Account." Both of Respondent's law office associated bank accounts are located at Branch Banking & Trust (BB&T). In that matter, Respondent's bank records were first subpoenaed for the following dates: April 1, 2010 through December 2013. A second subpoena was later issued for the following dates: July 1, 2008 through March 31, 2010 and January 1, 2014 to "present" which at the time the subpoena was issued was June of 2014. The matters and time frame alleged in this instant Statement of Charges are similar to and include the dates of the bank records subpoenaed requested in the first Statement of Charges.

s0028003.WPD

3

from his subpoenaed bank records from which clients' settlement check Respondent is transferring his attorney's fees and/or the exact amount of the attorney fee he has claimed he earned in relation to any specific client.

8.    For example, in September 2011, the month in which Respondent deposited the "Full and Final Settlement of All Claims" check in the amount of $23,751.92 into his IOLTA Client Trust Account on behalf of Ms. Holmes, there are no checks reflecting a payment of an attorney's fee, rather Respondent's "Client Trust Account" reflects twenty-five (25) telephone transfers were made from the "Client Trust Account" to various other of Respondent's bank accounts at BB&T, fourteen (14) of which occurred on or after the September 20, 2011 deposit of Ms. Holmes' settlement check.

9.    Ms. Holmes also stated that she was able to speak to Respondent in or about late March or early April 2014, and informed him that she intended to file this complaint because she had not received any further information from Respondent about her case, unpaid medical bills, and any remaining settlement funds that may or may not be due her. Ms. Holmes said that Respondent requested that she "hold off" and he would "take care of everything in a few days or week." She stated that she waited, but "still he has done nothing." Ms. Holmes filed her ethics complaint against Respondent on or about May 12, 2014.

10.    Respondent was notified by the Office of Disciplinary Counsel of Ms. Holmes' complaint by letter dated May 15, 2014.

s0058306.WPD

4

11.    On or about June 10, 2014, Respondent provided his verified response to the Office of Disciplinary Counsel. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

12.    Respondent stated that Complainant contacted his office daily during the summer of 2011 requesting that the claim be settled. Respondent explained that the medical expenses exceeded Fifteen Thousand Dollars ($15,000.00) and the insurance company only offered approximately Twenty-Three Thousand Dollars ($23,000.00), but Complainant insisted on settling the claim. Respondent stated that he further explained that he would have to "...negotiate aggressively with her health care providers to get reductions on her bills, and that it may take time to satisfactorily resolve." Respondent stated that Complainant again requested to settle the claim. Therefore, Respondent settled the claim, provided Complainant with a partial settlement, and maintained that he kept all other monies safeguarded. Respondent also stated that he has negotiated with the providers and is prepared to fully settle Ms. Holmes' claim.

13.    Because Respondent failed to act with reasonable diligence by failing to negotiate with Ms. Holmes' medical providers in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, , which provides as follows:

> **Rule 1.3. Diligence.**
>     A lawyer shall act with reasonable diligence and promptness in representing a client..

14.  Because Respondent failed to keep Ms. Holmes reasonably informed about the status

of the matter and failed to promptly comply with Ms. Holmes' reasonable requests for

information, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional

Conduct, which provides as follows:

> **Rule 1.4. Communication.**
>      (a)    A lawyer shall keep a client reasonably informed
> about the status of a matter and promptly comply with
> reasonable requests for information.
>      (b)    A lawyer shall explain a matter to the extent
> reasonably necessary to permit the client to make
> informed decisions regarding the representation.

15.  By failing to safeguard and promptly deliver, after nearly three (3) years, any

remaining settlement money to Ms. Holmes may or may not be entitled to receive

and/or submit payment to Ms. Holmes' medical providers, Respondent has violated

Rules 1.15 (a) and (b) of the Rules of Professional Conduct, which provides as

follows:

> **Rule 1.15. Safekeeping property.**
>      (a)    A lawyer shall hold property of clients or third
> persons that is in a lawyer's possession in connection
> with a representation separate from the lawyer's own
> property.   Funds shall be kept in a separate account
> designated as a "client's trust account" in an institution
> whose accounts are federally insured and maintained in
> the state where the lawyer's office is situated, or in a
> separate account elsewhere with the consent of the client
> or third person.   Other property shall be identified as
> such and appropriately safe guarded. Complete records
> of such account funds and other property shall be kept by

6

the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person shall promptly render a full accounting regarding such property.

### COUNT II
### I.D. No. 14-01-273
### Complaint of Carl E. Hodges

16.    Complainant Carl Hodges retained Respondent to represent him after a motor vehicle accident which occurred on or about May 10, 2011.

17.    Mr. Hodges stated that Respondent settled the claim over one (1) year ago and he was informed that a check had been issued to Respondent. However, Respondent indicated to him that he could not release any funds because he was awaiting information from Workers Compensation and Medicare.

18.    Mr. Hodges inquired about the status of his matter through numerous telephone calls to Respondent's office which were not returned.

19.    Mr. Hodges indicated that on his own, he subsequently obtained documents and information which he faxed to Respondent in attempt to finalize his matter.

20.  Mr. Hodges stated that Respondent eventually agreed to a meeting in or about early April 2014 in order to settle the claim, however, he "failed to do so."

21.  Mr. Hodges stated that he attempted to telephone Respondent numerous times, and thereafter to inform Respondent that he intended to file this complaint. Mr. Hodges said he received a return call from Respondent on or about May 2, 2014, requesting that he withhold filing a complaint. Respondent stated that he would be in the office the following Tuesday and would overnight a check to Complainant at that time.

22.  When Respondent failed to send him a check, Mr. Hodges filed his complaint on or about May 19, 2014.

23.  Respondent was notified of the complaint by the Office of Disciplinary Counsel by letter dated May 19, 2014, and requested a response.

24.  On or about June 10, 2014, Respondent provided his verified response and stated that he had reviewed the applicable rules specified and denied any allegation that he violated those rules.

25.  Respondent maintained that he had communicated with Mr. Hodges and kept him fully informed of the case. Respondent stated that he has kept Mr. Hodges' settlement monies safe and has made partial distributions to Complainant while awaiting notice of the final lien from Medicare. Respondent stated that he is still awaiting the same. However, Respondent said he has negotiated a settlement amount regarding an out of state workers compensation lien.

26.    Respondent stated that he will contact Mr. Hodges upon receipt of the Medicare final lien letter.

27.    On or about July 3, 2014, this Office provided a copy of Respondent's response to Mr. Hodges and requested any additional comments to be submitted within ten (10) days.

28.    On or about July 20, 2014, Mr. Hodges faxed a letter to Disciplinary Counsel stating that Respondent was using "every delay possible to settle [his] case." He included a April 1, 2014, letter he had received from CMS explaining that $1,333.24 needed to be repaid to Medicare which he said he gave to Respondent at their early April 2014 meeting.

29.    Upon information and belief, Respondent deposited two settlement checks in the amount of $20,000.00 and $27,500.00 from PMA Management Corporation on behalf of Mr. Hodges into his IOLTA Client Trust Account on or about August 5, 2013, and August 12, 2013, respectively.

30.    Upon information and belief, Respondent's subpoenaed bank records do not appear to reflect that he deducted his "attorney fee" from any settlement he obtained on behalf of Mr. Hodges.

31.    Upon information and belief, Respondent's subpoenaed bank records reflect that his apparent pattern and practice for deducting his "attorney's fee" from his "Client Trust Account" for deposit into his "General Account" and his other bank accounts is to

employ the use of a telephone transfer. However, due to the manner in which the telephone transfer is reflected on his monthly statements, it is impossible to determine from his subpoenaed bank records from which clients' settlement check Respondent is transferring his attorney's fees and/or the exact amount of the attorney fee he has claimed he earned in relation to any specific client.

32. For example, in August 2013, the month in which Respondent deposited the checks in the amount of $20,000.00 into his IOLTA Client Trust Account on August 5, 2013, and $27,500.00 on August 12, 2013, on behalf of Mr. Hodges, there are no checks reflecting a payment of an attorney's fee, rather Respondent's "Client Trust Account" reflects twenty-one (21) telephone transfers were made from the "Client Trust Account" to various other of Respondent's bank accounts at BB&T, eight of which occur between August 5, and August 9, 2013, and the remaining telephone transfers all after August 12, 2013.

33. Respondent's bank records for his IOTLA Client Trust Account do reflect that by check dated August 19, 2013, he did provide Mr. Hodges with $5,000.00 of the $47,500.00 he had deposited on Mr. Hodges' behalf.

34. Upon information and belief, there are no other identifiable checks paid out on behalf of Mr. Hodges from Respondent's IOLTA Client Trust Account between the August 2013 deposit and October 2013 when Respondent's balance in his IOTLA Client Trust Account fell to $23,925.42.

35.   Upon information and belief, Respondent should have been "safeguarding" the remaining approximate $27,000.00 he was holding for Mr. Hodges, even assuming it could be determined from the telephone transfers that he took a standard attorney fee of 1/3 in this matter.

36.   Because Respondent failed to act with reasonable diligence by failing to finalize Mr. Hodges' matter in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

37.   Because Respondent failed to keep Mr. Hodges reasonably informed about the status of the matter and failed to promptly comply with his reasonable requests for information about the status of his matter, including his inquiries about Respondent's failure to timely disburse payment to Medicare after the matter was apparently brought to his attention, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

38.   Because Respondent failed to promptly notify Medicare and/or other medical providers of receipt of funds to which they may have been entitled, and failed to promptly deliver said funds which he had in his possession since August of 2013, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

39.   Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed

to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct, which provides as follows:

> **Rule 8.4.  Misconduct.**
> It is professional misconduct for a lawyer to:
> \* \* \*
> (c)  Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

### COUNT III
### I.D. No. 14-01-354
### Complaint of Terry L. & Cathy M. Rhodes

40.    Complainants Terry L. and Cathy M. Rhodes hired Respondent as a result of a car accident.

41.    On or about January 8, 2014, Mr. and Mrs. Rhodes received a telephone call from Respondent informing them that Erie Insurance had made an offer of Sixty Thousand Dollars ($60,000.00) and Nationwide Insurance had offered Twenty Thousand Dollars ($20,000.00) to settle their claim, and Respondent inquired whether that they wanted to settle for that amount. Complainants stated that they told Respondent to do "whatever he thought because he said he may be able to get more." Respondent told Complainants he would call again in a couple of weeks. However, Mr. and Mrs. Rhodes stated that they never heard anything back from Respondent, and thus, they began attempting to contact Respondent in or about the end of January 2014.

42. On or about May 16, 2014, Mr. Rhodes contacted Erie Insurance in order to make a change to his insurance policy. At that time, Mr. Rhodes was informed that Erie Insurance had settled the claim on or about January 16, 2014, and that Respondent had received a check in the amount of Sixty-Five Thousand Dollars ($65,000.00). Erie Insurance had also requested a copy of the release from Respondent, but Respondent had not returned Erie Insurance's calls.

43. The Rhodes contacted Respondent's office on or about May 16, 2014, to inquire about the settlement. Respondent's paralegal was unable to assist and stated that they needed to speak to Respondent. A few hours later, Respondent returned the Rhodes' call and stated that he had been very busy, but would send them a release to sign.

44. On or about June 27, 2014, Mr. and Mrs. Rhodes said they received the releases and a partial payment in the amount of Five Thousand Dollars ($5,000.00) from Respondent's paralegal. However, when Mr. and Mrs. Rhodes requested a meeting with Respondent, they were informed that Respondent was out of town.

45. Mr. and Mrs. Rhodes filed their complaint against Respondent on or about July 2, 2014.

46. By letter dated July 8, 2014, Respondent was notified of the pending complaint and that he was requested to respond.

47.  On or about July 24, 2014, Respondent provided his verified response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

48.  Respondent maintained that he successfully negotiated a settlement and had kept Mr. and Mrs. Rhodes fully informed.

49.  Respondent stated that he has held their funds in a client trust account for "safe keeping" and did notify Complainants upon receipt of the funds. Respondent also stated that he has provided partial payments to them while continuing to negotiate a reduction of their medical expenses.

50.  On or about August 6, 2014, Disciplinary Counsel provided a copy of Respondent's response to Mr. and Mrs. Rhodes for further comments.

51.  By letter received on or about August 13, 2014, Mr. and Mrs. Rhodes reiterated that Respondent telephoned them on or about January 8, 2014, and told them of the offer to settle. Mr. Rhodes stated that he agreed to the amount offered, but stated that Respondent said he would call back in a couple of weeks, but he never did. Upon receiving a partial payment from Respondent's paralegal, Mr. and Mrs. Rhodes said they inquired as to when they would receive the remainder. They maintained that Respondent has failed to keep them informed and, "would just like for [Respondent] to give us our money."

a00258309.WPD

14

52.    Mr. and Mrs. Rhodes stated that they believed the settlement was for $85,000.00 and that they have only received one partial payment in the amount of $5,000.00. Finally, they stated that they do not believe Respondent has been negotiating a reduction in their medical expenses.

53.    Upon information and belief, Respondent's subpoenaed bank records from January 2014 to June 2014 indicate that he deposited a settlement check in the amount of $65,000.00 from Erie Insurance Property & Casualty on behalf of Mr. Rhodes into his IOLTA Client Trust Account on or about January 17, 2014, and do not indicate any other checks paid on behalf of Mr. and Mrs. Rhodes for that time period.

54.    Because Respondent failed to act with reasonable diligence in failing to advise Mr. and Mrs. Rhodes of the receipt the $65,000.00 settlement check in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

55.    Because Respondent failed to keep Mr. and Mrs. Rhodes reasonably informed about the status of the matter and failed to promptly comply with their reasonable requests for information about the status of their matter, including their inquiries about Respondent's failure to timely disburse payment, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

56.    Because Respondent failed to promptly notify Mr. and Mrs. Rhodes of receipt of funds to which they were entitled, and failed to promptly deliver said funds which he has had in his possession for since January of 2014 and to which Mr. and Mrs. Rhodes

have allegedly only received $5,000.00, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

57.    Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct, as set forth above.

## COUNT IV
## I.D. No. 14-01-372
## Complaint of Elizabeth A. Long

58.    Complainant Elizabeth Long retained Respondent as a result of a car accident which occurred on or about June 28, 2010.

59.    On or about September 12, 2012, Ms. Long received a letter from Respondent requesting that she sign and return the enclosed release which indicated that a settlement in the amount of Twenty Thousand Five Hundred Dollars ($20,500.00) had been reached. Ms. Long said she signed and returned the release the following day.

60.    Beginning on or about November 7, 2012, until on or about April 23, 2013, Ms. Long said she attempted to contact Respondent numerous times in order to check on the status of her case, but she did not receive any return calls from Respondent.

61.    On or about May 3, 2013, Respondent contacted Ms. Long and explained that he was awaiting a lien letter from Medicare and apologized for the delay.

62.  Ms. Long alleged that she attempted to contact Respondent a few more times during the month of June 2013. On or about July 10, 2013, Respondent returned her calls and stated he would send a check for Ten Thousand Dollars ($10,000.00), but he was still awaiting information regarding the lien from Medicare. Ms. Long alleged that "[t]his money supposedly was out of [Respondent's] personal account, he said."

63.  On or about June 16, 2014, Ms. Long said she consulted with an attorney friend, who, with Complainant's permission, sent Respondent a letter regarding the remainder of the settlement and requested that the matter be concluded within ten (10) days. The attorney friend advised that otherwise, Ms. Long should file this complaint.

64.  After receiving no reply from Respondent, Ms. Long filed this complaint on July 14, 2014.

65.  On or about July 15, 2014, Respondent was notified of the pending complaint and that he was requested to respond.

66.  On or about August 6, 2014, Respondent provided this Office his response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

67.  Respondent stated that he settled Ms. Long's claim in the amount of Twenty Thousand Five Hundred Dollars ($20,500.00) and had provided a partial payment to Ms. Long in the amount of Ten Thousand Dollars ($10,000.00). Respondent stated

that he advised Ms. Long that he would not be able to fully settle until he received the final lien letter from CMS/Medicare, which he is still awaiting.

68.    Respondent stated that he has kept Ms. Long fully informed about all matters.

69.    Respondent stated that he has protected Ms. Long's funds, and provided a partial payment to her but Respondent denied using his personal account to do so.

70.    Respondent's subpoenaed bank records indicate that a settlement check from State Farm Mutual Insurance Company in the amount of $20,500.00 and dated May 30, 2012, was deposited into Respondent's IOLTA Client Trust Account on or about June 5, 2012.

71.    Respondent's subpoenaed bank records indicate that by check dated July 10, 2013, from his IOLTA Client Trust account, Respondent paid Ms. Long a "partial payment pending medicare lien" in the amount of $10,000.00.

72.    Upon information and belief, Respondent's subpoenaed bank records do not reflect any other payment made to or on behalf of Ms. Long.

73.    Because Respondent failed to act with reasonable diligence in failing to advise Ms. Long of the receipt the $20,500.00 settlement check in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

74.    Because Respondent failed to keep Ms. Long reasonably informed about the status of her matter and failed to promptly comply with her reasonable requests for information about the status of her matter, including her inquiries about Respondent's

s00087825.WPD

18

failure to timely disburse payment, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

75.    Because Respondent failed to promptly notify Ms. Long of receipt of funds to which she and/or her medical provider may be entitled, and failed to promptly deliver said funds which has had in his possession for since September of 2012 and to which Ms. Long has allegedly only received $10,000.00, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

76.    Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct, as set forth above.

**COUNT V**
**I.D. No. 14-01-383**
**Complaint of Bertha J. McCormick**

77.    In or about November of 2011, Complainant Bertha McCormick retained Respondent as a result of a car accident, which had occurred on or about November 11, 2009.

78.    In or about September or October of 2012, Ms. McCormick stated that Respondent told her that State Farm Insurance Company agreed to settle for the amount of $25,000.00 and she signed an "agreement."

79. Respondent informed Ms. McCormick that he would also file a claim with Nationwide Insurance Company. He then informed her that Nationwide agreed to settle the claim for the amount of Seven Thousand Five Hundred Dollars ($7,500.00). Ms. McCormick said she signed the agreement in or about June 2013.

80. In or about October 2013, Respondent informed Ms. McCormick that she had "failed to sign one in area." Ms. McCormick said she signed the "agreement" again and sent it back to Respondent via certified mail. Again, after not receiving anything or hearing back from Respondent, Ms. McCormick attempted to contact his office and was told that they had not received the papers. Ms. McCormick said she advised Respondent's office that she had mailed the document via certified mail, and had confirmation of delivery approximately one month prior. Ms. McCormick was then informed that Respondent had the "papers" in his office and she should "...hear something within two (2) weeks."

81. Ms. McCormick attempted to contact Respondent numerous times throughout November and December 2013 as well as January 2014 without success. During one of her attempts, Ms. McCormick requested an advance on the settlement. Respondent's assistant informed Ms. McCormick that they could send her $2,000.00. Ms. McCormick said she continued to attempt to contact Respondent, but Respondent would not return her calls. Therefore, Complainant filed this complaint on or about July 17, 2014.

82. On or about July 18, 2014, Respondent was notified of the complaint and he was requested to response.

83. On or about August 11, 2014, Respondent submitted his verified response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

84. Respondent stated that he was able to settle Ms. McCormick's claim in the amounts of $25,000.00 and $7,500.00, respectively.

85. Respondent stated that he had not yet completed negotiations with Ms. McCormick's medical providers to reduce her medical expenses. Respondent stated that he informed Ms. McCormick of the same, and provided a partial payment to her as well.

86. Respondent maintained that he has worked diligently on Ms. McCormick's case, kept her informed of the status, and is "safeguarding" her funds.

87. On or about August 28, 2014, Disciplinary Counsel provided a copy of Respondent's response to Ms. McCormick for further comments.

88. By letter received September 11, 2014, Ms. McCormick stated that she was not aware of any further negotiations after the agreement to settle. She was previously informed that "...once Nationwide received the signed paperwork agreeing to the settlement, it would take 10 to 14 days for us to complete everything needed."

89. On or about September 15, 2014, Disciplinary Counsel sent Respondent a copy of Complainant's letter and requested a response within ten (10) days and advising him

that failure to respond may subject him to disciplinary action pursuant to Rule 8.1(b) of the Rules of Professional Conduct.

90.    As of October 6, 2014, Respondent's response had yet to be received by the Office of Disciplinary Counsel.

91.    Respondent's subpoenaed bank records indicate that a settlement check from State Farm Mutual Insurance Company in the amount of $25,000.00 and dated December 20, 2012, was deposited into Respondent's IOLTA Client Trust Account on or about December 21, 2012.

92.    Respondent's subpoenaed bank records also indicate that a settlement check from Nationwide Insurance Company in the amount of $7,500.00 and dated February 12, 2014, and was subsequently deposited into Respondent's IOLTA Client Trust Account.

93.    Upon information and belief, Respondent's subpoenaed bank records do not reflect any other payment made to or on behalf of Ms. McCormick.

94.    Because Respondent failed to act with reasonable diligence in failing to advise Ms. McCormick of the receipt the $25,000.00 and the $7,500.00 settlement checks in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

95.    Because Respondent failed to keep Ms. McCormick reasonably informed about the status of her matter and failed to promptly comply with her reasonable requests for

information about the status of her matter, including her inquiries about Respondent's failure to timely disburse payment, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

96.   Because Respondent failed to promptly notify Ms. McCormick of receipt of funds to which she and/or her medical providers are entitled, and failed to promptly deliver said funds which he has had in his possession since December of 2012 and February of 2014, respectively, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

97.   Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct, as set forth above.

**COUNT VI**
**I.D. No. 14-01-398**
**Complaint of Albert R. Burns, Jr.**

98.   Complainant Albert Burns retained Respondent as a result of a car accident, which occurred in or about May 2007.

99.   Mr. Burns stated, "there has been $87,000.00 dollars collected to date the last of which I signed a release for $2,000.00 from Encompass in February 2014." Mr. Burns provided a copy of a settlement sheet, but stated it is several years old and does not

23

reflect the last $2,000.00 he received. Nonetheless, Mr. Burns acknowledged that he has received the majority of the funds that are due to him as he has received several partial payments.

100. Mr. Burns stated, however, "[o]ver the years it has always been very difficult to get anyone besides the receptionist to speak with [Complainant] and frankly it has always been necessary to demand a return call or send a letter to get their attention."

101. Mr. Burns stated he received one (1) return call from Respondent in or about late 2013. At that time, Mr. Burns informed Respondent that he wanted his claim completed. Mr. Burns alleged that Respondent told him that he was attempting to get the last insurance company, Encompass, to settle and was also working on reducing costs.

102. In or about February 2014, Respondent's office notified Mr. Burns that Encompass required a signed release form. Mr. Burns said he signed the form and immediately faxed it back to Respondent's office.

103. In or about May 2014, Mr. Burns received a letter, a copy of which was provided with this complaint, from Xerox Recovery Services, regarding money owed to Carelink. The letter stated that they had attempted to contact Respondent several times but were unsuccessful.

104. Upon reviewing the settlement sheet Respondent had previously provided, Mr. Burns alleged that Respondent had failed to pay Carelink. Mr. Burns stated that he is

"…concerned that these monies have been spent by [Respondent's] office as opposed to paying them to the proper parties."

105.    Mr. Burns and his wife attempted to contact Respondent several times since receiving the letter, but were only able to leave messages. On one (1) occasion, Mr. Burns' wife spoke with Respondent's assistant and explained their concerns about the money. Mr. Burns reported that the assistant explained to his wife that Respondent handled all of the money and requested that they fax a letter to the office and she would bring it to Respondent's attention.

106.    Mr. Burns' wife contacted Respondent's office in or about July 2014 requesting a return call from Respondent. When Respondent did not return her telephone call, Mr. Burns filed his complaint against Respondent.

107.    On or about July 25, 2014, Respondent was notified of the pending complaint and requested his response.

108.    On or about August 22, 2014, Respondent provided his verified response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

109.    Respondent acknowledged that settlement money had been received from State Farm and Nationwide Insurance Companies. Respondent stated that he recently received a settlement from Encompass as a result of excess underinsured coverage, which took

he said took more than three (3) years to negotiate, thereby causing a significant delay in resolving the claim.

110. Respondent stated that he has kept Mr. Burn fully informed about the status of his claim.

111. Respondent stated that he has deposited funds into his trust account and informed Mr. Burns upon their receipt, as evidenced by Mr. Burns' receipt of funds during the pendency of the claim.

112. On or September 5, 2014, Disciplinary Counsel provided a copy of Respondent's response to Mr. Burns for further comments.

113. By letter received on or about September 11, 2014, Mr. Burns acknowledged that he received money from Respondent during the pendency of his claim. However, Mr. Burns stated that he did not file his complaint as a result of the money. Mr. Burns stated that his complaint was filed due to a lack of response from Respondent after he received the letter from Xerox Recovery Services, noting that the Carelink bill had not been paid. Mr. Burns stated, "[i]f everything was handled as carefully and within all of the rules why wouldn't [Respondent] pick up the phone and make a call as opposed to forcing a complaint to be filled [sic]."

114. Respondent's recent subpoenaed bank records indicate that a settlement check from Encompass Insurance in the amount of $2,000.00 and dated October 7, 2013, was

deposited into Respondent's IOLTA Client Trust Account on or about October 29, 2013.

115. By way of background, Respondent had filed suit on behalf of Mr. Burns on or about May 21, 2009, in a case styled as <u>Albert R. Burns, Jr. v. Roy E. Hoffman</u>, Circuit Court of Mason County, Civil Action No. 09-C-64-N. However, Respondent did not cause the defendant in that matter to be served until on or about October 25, 2011.

116. On or about January 3, 2014, counsel for the defendant in Civil Action No. 09-C-64-N, David C. Ray, Esquire, filed a Motion to Enforce Settlement. In his motion, he alleged that on or about October 11, 2013, Respondent was provided with the settlement check, along with a Release to be executed by Mr. Burns, and the Order of Dismissal to be executed by Respondent. On or about November 21, 2013, counsel for the defendant wrote again to Respondent requesting that Respondent forward an executed release and dismissal order as the settlement check had been cashed. Counsel for the defendant also stated that he had attempted to contact Respondent by telephone, as well, and had been unsuccessful. A hearing on the Motion to Enforce Settlement was set for January 17, 2014, and an amended notice of hearing was filed on or about January 23, 2014, setting a hearing for February 14, 2014. Upon information and belief, the hearing did not occur but a Final Order of Dismissal was entered by the Court on or about March 18, 2014.

117. Because Respondent failed to act with reasonable diligence by failing to pay Mr. Burns' known medical providers and/or subrogation upon receipt of settlement funds, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

118. Because Respondent failed to keep Mr. Burns reasonably informed about the status of his matter and failed to promptly comply with his reasonable requests for information about the status of his matter, including his inquiries about Respondent's failure to timely disburse payment to medical providers and/or subrogation, and by failing to timely advise Mr. Burns of receipt of the $2,000.00 settlement from Encompass, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

119. Because Respondent failed to make reasonable efforts consistent with the stated and agreed upon objectives of his client to expedite litigation, including but not limited to failing to timely return a signed Release after cashing the settlement check, thereby causing opposing counsel to file a Motion to Enforce Settlement, Respondent has violated Rule 3.2 of the Rules of Professional Conduct which provides as follows:

> **Rule 3.2. Expediting litigation.**
> A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client.

120. Because Respondent failed to promptly deliver funds to which Mr. Burns and/or medical providers and/or subrogation are entitled, and failed to promptly deliver said

funds which he may have had in his possession for a number of years, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

121.   Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct, as set forth above.

122.   Because Respondent agreed to a settlement, negotiated the settlement check, failed to return an executed Release, and then failed to respond to opposing counsel's inquires, thereby causing opposing counsel to file a Motion to Enforce Settlement, he has violated Rule 8.4(c), as set forth above, and 8.4(d) of the Rules of Professional Conduct, which provides as follows:

>    **Rule 8.4. Misconduct.**
>        It is professional misconduct for a lawyer to:
>        * * *
>        (d)   Engage in conduct that is prejudicial to the administration of justice.

### COUNT VII
### I.D. No. 14-01-414
### Complaint of Theresa S. Brown

123.   In or about October of 2008, Complainant Theresa S. Brown retained Respondent after she was injured as a result of a car accident.

124.  Ms. Brown alleged that any time she attempted to contact Respondent, she was told that he was not in the office. Ms. Brown asserted that she leaves message for Respondent to return her calls but Respondent has only returned a few. At one point, Ms. Brown said that Respondent informed her that he was having trouble with an insurance adjuster and would have to speak with the supervisor. Ms. Brown said that she informed Respondent to "take it to court." Respondent said he would.

125.  Ms. Brown stated that she has been waiting for six (6) years. Furthermore, she stated that she was told on several times that Respondent would send her money, but she has never received anything.

126.  Finally, Ms. Brown stated that she has no documents regarding her claimt.

127.  On or about August 12, 2014, Respondent was notified of the pending complaint and requested his response.

128.  On or about September 17, 2014, Respondent submitted his verified response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

129.  Respondent stated that he has kept Ms. Brown informed of the status of her claim.

130.  Respondent stated that he has not yet received any settlement funds on her behalf. While Respondent stated that he has settled the matter in the amount of $25,000.00, the adjuster would not provide the funds until a final lien letter had been received from CMS/Medicare. However, upon receiving the final lien letter, Respondent then

s00SR309.WPD

30

said that the adjuster would not provide the funds. Respondent informed Ms. Brown that they may need to file a pleading to enforce the settlement, but he is currently attempting to resolve the issue without additional litigation.

131.   Respondent maintained that he has communicated with Ms. Brown at least ten (10) times during the course of her claim. Respondent stated that he has met with Ms. Brown and has taken and initiated several telephone calls.

132.   Respondent denied promising to send Ms. Brown money, as he has not received settlement funds.

133.   Because Respondent failed to act with reasonable diligence in representing Ms. Brown and finalizing her claim and/or filing suit in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

134.   Because Respondent failed to keep Ms. Brown reasonably informed about the status of her matter and failed to promptly comply with her reasonable requests for information about the status of his matter, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

## COUNT VIII
### I.D. No. 14-01-424
### Complaint of Virginia D. Newsome

135.   Complainant Virginia Newsome retained Respondent as a result of a car accident, which occurred on or about November 4, 2010.

136. Mrs. Newsome stated that Medicare covered much of the cost of her and her late husband's injuries; however, she has also received several medical bills. Mrs. Newsome stated that Respondent instructed her to forward those bills to him.

137. Mrs. Newsome stated that generally, when she contacted Respondent, he would say everything is fine and for her to continue to send him any bills she received. However, "[r]ecently, last few months, [Respondent] failed to answer calls."

138. On or about August 1, 2014, Mrs. Newsome received a letter from the Department of Treasury stating that her Social Security benefits would be reduced by 25% beginning October 1, 2014, in order to repay a debt.

139. Mrs. Newsome stated that she attempted to contact Respondent, but was unsuccessful and she was unable to find out the status of her claim including whether a settlement had been reached. She indicated that she is attempting to contact the Department of Treasury herself in order to stop the reduction of her monthly benefits until more information is available.

140. On or about August 12, 2014, Respondent was notified of the pending complaint and his response was requested.

141. Before receiving a response from Respondent, on or about September 9, 2014, Mrs. Newsome provided additional information. Mrs. Newsome indicated that she had spoken with an adjustor with Geico and had requested a copy of the settlement check

that was issued in her claim. However, Mrs. Newsome said that the adjustor explained that the adjuster would attempt to contact Respondent first.

142. Approximately four (4) days later, Mrs. Newsome had not heard back from the adjustor, so she contacted her again. The adjustor explained that she had attempted to contact Respondent but was unsuccessful. The adjustor sent a copy of an April 4, 2011 check in the amount of $25,000.00 made payable to Mrs. Newsome and Respondent, a copy of which Mrs. Newsome included with her letter.

143. Mrs. Newsome stated that the signature on the back of the check is not her signature and she stated that she did not know if Respondent had Power of Attorney to sign the check on her behalf and deposit it in his trust account because Respondent had not explained any of that to her. Mrs. Newsome also noted that it has been over three (3) years since the check was issued, Respondent's office never informed her of the receipt of the check, and Respondent had also failed to pay her creditors.

144. Mrs. Newsome also stated that the debt owed to the Department of Treasury is $18,809.69.

145. Finally, Mrs. Newsome said she was not able to receive a copy of the check issued on behalf of her late husband, but she assumed it would have been for the same amount. Mrs. Newsome noted that her husband passed away a month prior to the issuance of the check, so he could not have signed the check either.[4]

_____

[4]In her initial complaint, Mrs. Newsome noted that her husband had died but that his death "was not due directly to [the] accident."

146.  On or about September 15, 2014, a copy of Mrs. Newsome's September 9, 2014 letter was also provided to Respondent with a request that he address the new allegations in his response to the complaint.

147.  On or about September 17, 2014, Respondent submitted his verified response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

148.  Respondent stated that he has communicated with Mrs. Newsome's son, Michael, throughout the pendency of the claim. Respondent stated that he has kept Michael informed about the status of the settlement recovery and the requirement to receive final lien letters from CMS/Medicare, which he is still awaiting.

149.  Respondent stated that he found a Treasury Department Notice of Claim for the amount of $1,555.54, about which he will contact Mrs. Newsome to discuss and make arrangements to pay.

150.  Respondent maintained that he is "safeguarding" Mrs. Newsome's funds, had notified Michael upon receipt of those funds, and has been "honest and transparent" with both Michael and Complainant.

151.  Respondent's subpoenaed bank records indicate that a settlement check from Geico Indemnity Insurance Company in the amount of $25,000.00 and dated April 2, 2011, in the name of Virginia Newsome, was deposited into Respondent's IOLTA Client Trust Account on or about April 6, 2011.

152.   Respondent's subpoenaed bank records indicate that a settlement check from Geico Indemnity Insurance Company in the amount of $25,000.00 and dated April 2, 2011, in the name of Preston Newsome, was also deposited into Respondent's IOLTA Client Trust Account on or about April 6, 2011.

153.   Upon information and belief, Respondent's subpoenaed bank records reflect that his apparent pattern and practice for deducting his "attorney's fee" from his "Client Trust Account" for deposit into his "General Account" and his other bank accounts is to employ the use of a telephone transfer. However, due to the manner in which the telephone transfer is reflected on his monthly statements, it is impossible to determine from his subpoenaed bank records from which clients' settlement check Respondent is transferring his attorney's fees and/or the exact amount of the attorney fee he has claimed he earned in relation to any specific client.

154.   For example, in April 2011, the month in which Respondent deposited the two checks in totaling $50,000.00 into his IOLTA Client Trust Account on April 6, 2011, on behalf of Mr. and Mrs. Newsome, there are no checks reflecting a payment of an attorney's fee, rather Respondent's "Client Trust Account" reflects thirty-three (33) telephone transfers were made from the "Client Trust Account" to various other of Respondent's bank accounts at BB&T, two of which occur on April 6, 2011, for a total of $3,000 and twenty-four (24) occur between April 7, 2011, and April 29, 2011,

and the remaining seven (7) telephone transfers occur from April 1, 2011, through April 5, 2011.

155.    Assuming Respondent's "attorney's fee" in the Newsomes' matter was a standard one third (1/3) equalling approximately $16,500.00. This would leave approximately $33,500.00 which Respondent should have been "safe guarding" in his "Client Trust Account" for the last three and one half (3½) years. However, on July 31, 2013, the balance in Respondent's "Client Trust Account" which at the time of deposit of the Newsomes' checks, ended in 9976, and which at the present time now ends in 1968, dropped to $14,376.36 on July 31, 2013.

156.    Because Respondent failed to act with reasonable diligence by failing to finalize the Newsome matter in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

157.    Because Respondent failed to keep Mrs. Newsome reasonably informed about the status of the matter and failed to promptly comply with her reasonable requests for information about the status of her matter, including her inquiries about Respondent's failure to timely disburse payment to Medicare and/or the Department of Treasury after his failure to reimburse Medicare and/or the Department of Treasury was brought to his attention, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

158.   Because Respondent failed to promptly notify Mrs. Newsome, Mrs. Newsome's medical providers, Medicare and/or the Department of Treasury of receipt of funds to which those she and those entities may have been entitled, and failed to promptly deliver said funds which he has had in his possession since April of 2011, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

159.   Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct.

## COUNT IX
### I.D. No. 14-01-445
### Complaint of Kathy A. Ramsey

160.   Complainant Kathy Ramsey retained Respondent as a result of a car accident.

161.   Ms. Ramsey stated that her claim was settled approximately two (2) years ago for the amount of $6,500.00; however, she stated that she has yet to receive any money.

162.   Ms. Ramsey stated that she has called Respondent's office numerous times and has spoken with one of Respondent's assistants, who allegedly informed her that her matter is still open. Therefore, Ms. Ramsey stated that her case has been pending for approximately five and a half (5½) years.

163. On or about August 26, 2014, Respondent was notified of the pending complaint and that his response was requested.

164. On or about September 16, 2014, Disciplinary Counsel received a facsimile from Respondent confirming that an extension of time to respond was granted at Respondent's request, allowing him to provide his response on or before September 30, 2014.

165. On or about September 30, 2014, Respondent submitted his verified response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

166. Respondent maintained that he has acted diligently in representing Ms. Ramsey and that he has complied with his duties to communicate with Ms. Ramsey. However, he maintained that he "honestly did not know that she was a frequent caller. I did not get her messages. I acknowledge that my staff did not inform me of her calls."

167. Respondent stated that "[Ms. Ramsay] was informed that we had settled her claim, received a check, and her funds have been protected."

168. Respondent's subpoenaed bank records indicate that a settlement check for Ms. Ramsey from Encompass Insurance in the amount of $6,500.00 and dated March 7, 2012, was deposited into Respondent's IOLTA Client Trust Account on or about March 22, 2012.

169.   Upon information and belief, Respondent's subpoenaed bank records do not indicate any payments made either to Ms. Ramsey or on her behalf from his IOLTA Client Trust Account.

170.   By way of background, Respondent had filed suit on behalf of Ms. Ramsey on or about February 11, 2011, in a case styled as <u>Kathy Ann Ramsey v. Eric John Hubbard</u>, Circuit Court of Kanawha County, Civil Action No. 11-C-203.

171.   On or about April 11, 2012, counsel for the defendant in Civil Action No. 11-C-203, Mark L. Garren, Esquire, filed a Motion to Enforce Settlement. In his motion, he alleged that after a settlement was reached, by letter dated March 19, 2012, Respondent was provided with the settlement check, a Release to be executed by Ms. Ramsey, and the Order of Dismissal to be executed by Respondent. On or about March 26, 2012, counsel for the defendant wrote again to Respondent requesting that Respondent forward an executed release and dismissal order because the same had not yet been received. Counsel for the defendant also stated that "[t]he parties have attempted, without success, to resolve this matter without the Court's intervention."

172.   By Certificate of Service dated April 13, 2012, Respondent filed "Plaintiff's Disclosure of Fact Witnesses."

173.   An agreed Dismissal Order was subsequently entered by the Court on April 24, 2012.

174. However, on May 10, 2012, counsel for the defendant filed a Notice of Hearing on his previously filed Motion to Enforce Settlement. A hearing was scheduled for June 8, 2012.

175. However, by letter dated June 7, 2012, and which was addressed to the Court, counsel for the defendant asked that the June 8, 2012 hearing be cancelled. Counsel for the defendant stated that "Plaintiff's counsel" had advised that Ms. Ramsey had executed the Release. However, he further stated that while he had not received neither the original Release nor a complete copy, he was asking that the hearing be cancelled based "upon representation by Plaintiff's counsel that the Release will be forthcoming."[5]

176. Because Respondent failed to act with reasonable diligence by failing to finalize the Ramsey matter in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

177. Because Respondent failed to keep Ms. Ramsey reasonably informed about the status of her matter and failed to promptly comply with her reasonable requests for information about the status of her matter, including her inquiries about Respondent's failure to timely disburse payment to her, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

---

[5]Upon information and belief, the Release was signed and/or notarized on or about June 4, 2012, and that Respondent did subsequently forward the original Release.

a00087825.WPD

40

178. Because Respondent failed to make reasonable efforts consistent with the stated and agreed upon objectives of his client to expedite litigation, including but not limited to failing to timely return a signed Release and then filing Plaintiffs' Disclosure of Fact Witness all after negotiating the settlement check, thereby causing opposing counsel to file a Motion to Enforce Settlement, Respondent has violated Rule 3.2 of the Rules of Professional Conduct, which provides as follows:

> **Rule 3.2. Expediting litigation.**
> A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client.

179. Because Respondent failed to promptly notify Ms. Ramsey of receipt of funds to which she is entitled, and failed to promptly deliver said funds to Ms. Ramsey and which he has had in his possession since March of 2012, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

180. Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), and Rule 8.4(c) of the Rules of Professional Conduct, as set forth above.

181. Because Respondent agreed to a settlement, negotiated the settlement check, failed to return an executed Release, then filed Plaintiffs' Disclosure of Fact Witnesses, and then failed to respond to opposing counsel's inquires about the status of the Release, thereby causing opposing counsel to file the Motion to Enforce Settlement in order

to receive the Release, he has violated Rule 8.4(c) and 8.4(d) of the Rules of Professional Conduct, as set forth above.

## COUNT X
### I.D. No. 14-01-446
### Complaint of Leah D. Johnson

182. Complainant Leah D. Johnson retained Respondent as a result of a car accident, which occurred on or about February 14, 2011.

183. Ms. Johnson stated that she has never met Respondent because she met with another attorney, who was working with Respondent at the time, to fill out paperwork. Ms. Johnson also stated that she has spoken with one of Respondent's assistants, in order to get details on her claim.

184. Ms. Johnson alleged that Respondent never returned any of her calls or messages until approximately one (1) year and six (6) months after she hired him when Respondent called her to inform her that he "was going to fight for more money for settlement." In or about September 2013, Respondent informed Ms. Johnson that he was able to get as much as the other party's insurance would agree which he told her was $11,300.00 for her settlement and $14,600.00 for her son's settlement, of which Respondent would retain thirty percent (30%) for his attorney's fees. Ms. Johnson said that she inquired about a partial payment and she was able to obtain $1,000.00 the following day and she was told that Respondent would give her another partial payment approximately two (2) weeks later.

185.  Approximately two (2) weeks later, Ms. Johnson said she attempted to contact Respondent. Approximately three (3) months later, in or about December 2013, Respondent returned her call and provided another partial payment to her in the amount of $3,000.00. Ms. Johnson stated that Respondent also informed her that the claim would be closed and she would receive the final settlement in approximately one (1) month.

186.  Ms. Johnson stated that she has not heard from Respondent since then, and that she has attempted to call his office twice weekly and filed her complaint after not receiving any response from Respondent or any remaining funds from her settlement.

187.  On or about August 26, 2014, Respondent was notified of the pending complaint and that a response was requested.

188.  On or about September 16, 2014, Disciplinary Counsel received a facsimile from Respondent confirming that an extension of time to response was granted at Respondent's request, allowing him to provide his response on or before September 30, 2014.

189.  On or about September 30, 2014, Respondent submitted his verified response to the complaint. Respondent stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

190. Respondent maintained that he has acted diligently in representing Ms. Johnson and that he has complied with his duties to communicate with Ms. Johnson, "but obviously not to her satisfaction."

191. Respondent stated that while he has received Ms. Johnson's settlement funds, he has not yet received her son's settlement funds. Respondent stated that "[a] summary proceeding will need to be scheduled upon filing of a petition."

192. Respondent stated that he had complied with his obligations with regard to maintaining Ms. Johnson's settlement funds, but noted that he provided partial disbursement to her after his receipt of the funds and that "she has medical expense[s] that must be subrogated. [He] is still negotiating that portion of her settlement."

193. Respondent's subpoenaed bank records indicate that a settlement check for Ms. Johnson from Safeco Insurance in the amount of $18,992.00 and dated September 9, 2013, was deposited into Respondent's IOLTA Client Trust Account on or about September 13, 2013.

194. Respondent's subpoenaed bank records indicate that by check dated December 11, 2013, he did provide Ms. Johnson with $3,000.00 from his IOLTA Client Trust Account.

195. Respondent's subpoenaed bank records indicate that by check dated February 11, 2014, he did provide Ms. Johnson with $1,000.00 from his IOLTA Client Trust Account.

a0058309.WPD                                          44

196.   However, upon information and belief, Respondent's subpoenaed bank records do not reflect the $1,000.00 "partial" payment to Ms. Johnson in September of 2013 which Ms. Johnson mentioned in her complaint.

197.   Upon information and belief, Respondent's subpoenaed bank records reflect that his apparent pattern and practice for deducting his "attorney's fee" from his "Client Trust Account" for deposit into his "General Account" and his other bank accounts is to employ the use of a telephone transfer. However, due to the manner in which the telephone transfer is reflected on his monthly statements, it is impossible to determine from his subpoenaed bank records from which clients' settlement check Respondent is transferring his attorney's fees and/or the exact amount of the attorney fee he has claimed he earned in relation to any specific client.

198.   For example, in September 2013, the month in which Respondent deposited Ms. Johnson's $18,922.00 check into his IOLTA Client Trust Account on September 13, 2013, there are no checks reflecting a payment of an attorney's fee, rather Respondent's "Client Trust Account" reflects twenty-five (25) telephone transfers were made from the "Client Trust Account" to various other of Respondent's bank accounts at BB&T, one of which occurs on September 13, 2013, for $3,000, which is not equal to 30% of $18,922.00 as indicated by Complainant as what Respondent's attorney fee would be in this matter.

199.   Upon information and belief, Respondent's subpoenaed bank records do not indicate any other payments made either to Ms. Johnson or on her behalf from his IOLTA Client Trust Account.

200.   Because Respondent failed to act with reasonable diligence by failing to finalize the Johnson matter, including the summary proceeding, in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

201.   Because Respondent failed to keep Ms. Johnson reasonably informed about the status of the matter and failed to promptly comply with her reasonable requests for information about the status of her matter, including her inquiries about Respondent's failure to timely disburse payment to her, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

202.   Because Respondent failed to promptly notify Ms. Johnson's medical providers and/or subrogation of receipt of funds to which those entities may have been entitled, and failed to promptly deliver said funds which he has had in his possession since September of 2013, to Ms. Johnson and her medical providers and/or subrogation, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

203.   Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed

to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct.

## COUNT XI
### I.D. No. 14-01-449
### Complaint of Jesse M. Denny

204.  Complainant Jesse M. Denny retained Respondent as a result of a car accident.

205.  Mr. Denny stated that he has attempted to contact Respondent numerous times but has been unsuccessful. Complainant stated that he has spoken with Respondent's assistant, but said that she "apparently knows nothing about the case."

206.  Mr. Denny stated that he contacted the Court to inquire about the status of his case and was informed that since the filing of the case, in approximately March of 2013, there has been no activity on the case, including no service upon the opposing party.

207.  Mr. Denny stated that he is concerned that his interests will be jeopardized by Respondent's neglect of the matter.

208.  On or about August 26, 2014, Respondent was notified of the pending complaint and that his response was requested.

209.  On or about September 16, 2014, Disciplinary Counsel received a facsimile from Respondent confirming that an extension of time to response was granted at Respondent's request, allowing him to provide his response on or before September 30, 2014.

210. On or about September 30, 2014, Respondent submitted his verified response and stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

211. Respondent maintained that he has acted diligently in representing Mr. Denny and that he has complied with his duties to communicate with Mr. Denny, although he stated that most of his communication has been with Mr. Denny's wife.

212. Respondent maintained that he has complied with Mr. Denny's "wishes throughout the pendency of this claim. Mr. Denny requested that [he] settle this claim without delay. In accordance with Mr. Denny's direction, [he] proposed a settlement of $19,000.00. Unfortunately, Mrs. Denny has objected and indicated that she did not want to pay [his] fee out of the proposed settlement. The liability carrier, Erie, has not tendered payment yet, as they are waiting for a final lien letter from CMS/Medicare." However, Respondent later stated that Mr. Denny had consented to the $19,000.00 settlement offer.

213. Respondent also maintained that he has not served the complaint on the defendant because Mr. Denny accepted the settlement offer. Furthermore, Respondent maintained that Mr. and Mrs. Denny "assented" to this "legal strategy."

214. Upon information and belief, Respondent filed suit on behalf of Mr. Denny in the Circuit Court of Raleigh County, in a matter styled as <u>Jesse Denny v. Daphne</u>

Suddreth, Civil Action No. 13-C-444. This matter was filed on or about May 13, 2013.

215.   Upon information and belief, the only other activity in Civil Action No. 13-C-444, is a motion filed on or about August 26, 2014, styled as "Plaintiff's Motion for Issuance of Second Summons and 120 Days to Perfect the Same" and which was filed by Mr. Denney's new counsel, Timothy P. Lupardus, Esquire.

216.   Because Respondent failed to act with reasonable diligence by failing to finalize the Denny matter in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

217.   Because Respondent failed to keep Mr. Denny reasonably informed about the status of the matter and failed to promptly comply with his reasonable requests for information about the status of his matter, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

218.   Because Respondent failed to make reasonable efforts consistent to expedite litigation consistent with the objectives of his client, he has violated Rule 3.2 of the Rules of Professional Conduct, as set forth above.

## COUNT XII
### I.D. No. 14-01-453
### Complaint of Timmy Hurley

219.   Complainant Timmy Hurley retained Respondent as a result of a car accident, which occurred in or about 2010.

220.  Mr. Hurley's claim has apparently settled but he stated that he has not received any money from the settlement of his claim despite the fact that Respondent "has promised [the] money many times.

221.  On or about August 27, 2014, Respondent was notified of the pending complaint and his response was requested.

222.  On or about September 16, 2014, Disciplinary Counsel received a facsimile from Respondent confirming that an extension of time to response was granted at Respondent's request, allowing him to provide his response on or before September 30, 2014.

223.  On or about September 30, 2014, Respondent submitted his verified response and stated that he reviewed the applicable rules specified and denied any allegation that he violated those rules.

224.  Respondent acknowledged that Mr. Hurley's liability claim had settled for $20,000.00 and that he has distributed "funds to him." Respondent stated that he had also recently settled "the underinsured claim with Nationwide, and am awaiting the settlement check to be issued." Respondent also stated that he was "awaiting final lien letter from CMS/Medicare and WV Medicaid."

225.  Respondent also maintained that he had kept Mr. Hurley informed of the progress of his claim and that he has communicated with Mr. Hurley often.

226. Respondent's subpoenaed bank records indicate that a settlement check for Mr. Hurley from Peak Property and Casualty Corporation in the amount of $20,000.00 and dated November 10, 2010, was deposited into Respondent's IOLTA Client Trust Account on or about November 18, 2010.

227. Respondent's subpoenaed bank records indicate that by eighteen (18) checks dated between December 21, 2010, through June 20, 2013, he did provide Mr. Hurley with $18,000.00 from his IOLTA Client Trust Account, in $1,000.00 installments.

228. Upon information and belief, Respondent's subpoenaed bank records reflect that his apparent pattern and practice for deducting his "attorney's fee" from his "Client Trust Account" for deposit into his "General Account" and his other bank accounts is to employ the use of a telephone transfer. However, due to the manner in which the telephone transfer is reflected on his monthly statements, it is impossible to determine from his subpoenaed bank records from which clients' settlement check Respondent is transferring his attorney's fees and/or the exact amount of the attorney fee he has claimed he earned in relation to any specific client.

229. For example, in September 2013, the month in which Respondent deposited Mr. Hurley's $20,000.00 check into his IOLTA Client Trust Account on November 18, 2010, there are no checks reflecting a payment of an attorney's fee, rather Respondent's "Client Trust Account" reflects twenty-seven (27) telephone transfers were made from the "Client Trust Account" to various other of Respondent's bank

accounts at BB&T, none of which occurs on November 18, 2010, and none for the entire month of November 2010 is for $2,000, which may or may not be Respondent's attorney fee in this matter.

230.   Upon information and belief, Respondent's subpoenaed bank records do not indicate any other deposits or payments made either to Mr. Hurley or on Mr. Hurley's behalf from his IOLTA Client Trust Account.

231.   Because Respondent failed to act with reasonable diligence by failing to finalize the Hurley matter in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

232.   Because Respondent failed to keep Mr. Hurley reasonably informed about the status of the matter and failed to promptly comply with his reasonable requests for information about the status of his matter, including his inquiries about his belief that Respondent failed to timely disburse payment to him, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

233.   Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct.

### COUNT XIII
### I.D. No. 14-01-473
### Complaint of Luegenia N. Pannell

s9938309.WPD

234. Complainant Luegenia Pannell hired Respondent as a result of a car accident, which occurred on or about August 1, 2006.

235. Ms. Pannell stated that she understands that these type of cases take time, however for approximately the past year, she has only spoken to Respondent once, which was on or about August 15, 2014. During that conversation, Respondent stated that he was waiting on "papers."

236. Ms. Pannell alleged that despite her numerous telephone calls to Respondent's office, she does not received a return call from Respondent.

237. At some point, Ms. Pannell stated that she received a call from Respondent's paralegal requesting that she go to the Beckley office in order to sign "papers" for a settlement in the amount of $14,000.00 and was informed that it would take no longer than two (2) weeks to get her money. However, Ms. Pannell stated that was approximately four (4) months ago but she has not heard or received anything from Respondent.

238. Ms. Pannell stated that she has been receiving letters in the mail from her medical providers. She stated that she has attempted to inform her providers that she has not received any money yet. To which, the providers informed her that it should not take this long. Ms. Pannell indicated that some providers have also attempted to contact Respondent regarding her bills, but have been unsuccessful as well. Ms. Pannell stated some of her bills have gone into "collections."

a00087825.WPD

53

239.  Respondent's subpoenaed bank records indicate that a settlement check for Ms. Parnell from Nationwide Insurance in the amount of $14,358.31 and dated November 3, 2010, was deposited into Respondent's IOLTA Client Trust Account on or about November 22, 2010.

240.  Respondent's subpoenaed bank records also indicate that a settlement check for Ms. Pannell from Nationwide Insurance in the amount of $15,000.00 and dated June 5, 2014, was deposited into Respondent's IOLTA Client Trust Account on or about June 13, 2014.

241.  Upon information and belief, Respondent's subpoenaed bank records do not indicate any other payments made either to Ms. Pannell or on her behalf from his IOLTA Client Trust Account.

242.  Upon information and belief, Respondent's subpoenaed bank records reflect that his apparent pattern and practice for deducting his "attorney's fee" from his "Client Trust Account" for deposit into his "General Account" and his other bank accounts is to employ the use of a telephone transfer. However, due to the manner in which the telephone transfer is reflected on his monthly statements, it is impossible to determine from his subpoenaed bank records from which clients' settlement check Respondent is transferring his attorney's fees and/or the exact amount of the attorney fee he has claimed he earned in relation to any specific client.

243.  For example, in November 2010, the month in which Respondent deposited Ms. Johnson's $14,358.31 check into his IOLTA Client Trust Account on November 22, 2010, there are no checks reflecting a payment of an attorney's fee, rather Respondent's "Client Trust Account" reflects twenty-seven (27) telephone transfers were made from the "Client Trust Account" to various other of Respondent's bank accounts at BB&T, two of which occur on November 22, 2010, for a total of $8,666.00. Six (6) more telephone transfers occur after November 22, 2010, and the remaining telephone transfers occurred prior to November 22, 2010.

244.  Because Respondent failed to act with reasonable diligence by failing to finalize the Pannell matter in a timely manner, he has violated Rule 1.3 of the Rules of Professional Conduct, as set forth above.

245.  Because Respondent failed to keep Ms. Pannell reasonably informed about the status of her matter and failed to promptly comply with her reasonable requests for information about the status of her matter, including her inquiries about Respondent's failure to timely disburse payment to her and/or her medical providers, he has violated Rule 1.4(a) and Rule 1.4(b) of the Rules of Professional Conduct, as set forth above.

246.  Because Respondent failed to promptly notify Ms. Pannell and/or her medical providers of his receipt of funds to which they may have been entitled, and failed to promptly deliver said funds which he has had in his possession since November of

2010, and June of 2014, to Ms. Johnson and/or her medical providers, he has violated Rules 1.15(a) and 1.15(b) of the Rules of Professional Conduct, as set forth above.

247.    Because Respondent misappropriated and spent or allowed a portion of his clients' funds to be spent on either his own personal matters or other client matters, he failed to properly account for his clients' funds in violation of Rule 1.15(a) and 1.15(b), as set forth above, and Rule 8.4(c) of the Rules of Professional Conduct.

## AGGRAVATING FACTORS

248.    As recognized by Supreme Court of Appeals of West Virginia in Lawyer Disciplinary Board v. Scott, 213 W.Va. 209, 216, 579 S.E.2d 550, 557 (2003), aggravating factors that exist in this matter, include but are not limited to, the following:

a.    Substantial experience in the practice of law; and

b.    Pattern and practice of failure to communicate with clients and failure to diligently pursue his clients' interests;

c.    multiple offenses;

d.    dishonest or selfish motive;

e.    refusal to acknowledge wrongful nature of conduct;

f.    indifference to making restitution; and

g.    prior disciplinary offenses.

* * *

Pursuant to Rule 2.9(d) of the Rules of Lawyer Disciplinary Procedure, the Investigative Panel has found that probable cause exists to formally charge you with a violation of the Rules of Professional Conduct and has issued this Statement of Charges. As provided by Rules 2.10 through 2.13 of the Rules of Lawyer Disciplinary Procedure, you have the right to file a verified written response to the foregoing charges within 30 days of service of this Statement of Charges by the Supreme Court of Appeals of West Virginia. Failure to file a response shall be deemed an admission of the factual allegations contained herein.

**STATEMENT OF CHARGES ORDERED** on the 11th day of October, 2014, and ISSUED this _____ day of October, 2014.

Robby J. Aliff, Chairperson
Investigative Panel
Lawyer Disciplinary Board

57