UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LIBERTY INSURANCE UNDERWRITERS,
INC.,

        Plaintiff,

v.                      Civil Action No. 2:15-cv-11013

R. MICHAEL MARTIN, individually,
R. MICHAEL MARTIN, d/b/a/
R. MICHAEL MARTIN & ASSOCIATES,
CHARLES ADKINS, TIFFANY ADKINS, TOM ADKINS,
ROGER D. BARKER, THERESA BROWN, CANDACE A.
CARRINGTON, CHARLES D. CARRINGTON,
JEANNIE DONNELLAN, ASHLEY JELINEK DUNCAN,
SHIRLEY GRIMMETT, MARY GAIL HUNDLEY,
ROBERT KARDOS, STEPHANIE KARDOS,
VICKI MARTIN-RHODES, HENRIETTA MAYNARD,
MELODY MAYNARD, BERTHA MCCORMICK, ANTHONY MCCORKLE,
LUEGENIA PANNELL, BRANDY PAULEY, STEPHEN PERRY,
KATHY RAMSEY, HURLEY RANDOLPH, SARA ROGERS,
SUSAN SCOTT, FLORENCE HUDNALL STANLEY, LUCAS SWISHER,
and JAMES VANCE,

        Defendants,
and

PATRICIA L. QUINET,

        Intervenor Defendant.


MEMORANDUM OPINION AND ORDER


        Pending is the plaintiff's motion for summary
judgment, entitled "Motion of Liberty Insurance Underwriters,
Inc. for Summary Judgment against defendants Melody Maynard,
Charles Adkins, James Vance, Leugenia Pannel, Bertha McCormick,

Anthony I. McCorkle, Ashley J. Duncan, Charles Carrington, Deonne Bowen,[1] and Candace A. Carrington," filed on February 3, 2025, (ECF No. 74), accompanied by a memorandum in support of the motion filed the same date, (ECF. No. 75).  Plaintiff states that, per the court's order recognizing the laws of bankruptcy, Defendant R. Michael Martin ("Mr. Martin") is not named in the motion.  Motion for Summ. J., ECF No. 74, at n.1.

The case was previously stayed by order entered on June 27, 2016, pending the resolution of a bankruptcy proceeding regarding Mr. Martin, pursuant to 11 U.S.C. § 362(a)(1).  See Order, ECF No. 67.  On December 20, 2024, counsel for the plaintiff filed a Notice of Termination of Bankruptcy, (ECF No. 70), to which a "Final Decree Closing Case" was attached as Exhibit 1, (ECF No. 70-1), reflecting that the bankruptcy proceeding had concluded and the bankruptcy case was closed.

---

[1] Plaintiff's motion names Deonne Bowen as a defendant and suggests that plaintiff is entitled to judgment on her claims. See id.  However, the court notes that Deonne Bowen is not a party to this action.  Reference to a disciplinary complaint by Deonne Bowen is made in the complaint, (see Compl., ECF No. 1, at 8), but she is not listed as a defendant on the complaint or any other court document preceding the plaintiff's pending motion.  The court has not received a motion from or regarding Deonne Bowen as an intervenor or in any other capacity. Accordingly, the dictates contained herein have no impact on Deonne Bowen.

As a result of the termination notice, and following a status update from plaintiff's counsel, the court suggested, among other things, by order entered January 3, 2025, that the plaintiff file a motion for summary judgment for those defendants, if any, whose claims had been resolved by virtue of the bankruptcy proceedings of Mr. Martin and perhaps his law firm.  <u>See</u> Order, ECF No. 73.

Thereafter, the plaintiff filed the present motion for summary judgment.  No defendants responded to the motion or otherwise to the court's order of January 3, 2025.[2]

## I. BACKGROUND

Plaintiff is an Illinois corporation with its principal place of business in Massachusetts.  <u>Id.</u> at 4.  The defendants, at the time of filing, were residents and citizens of West Virginia, including Mr. Martin, who, at the time of filing was a resident of Kanawha County, West Virginia, and his law firm, R. Michael Martin d/b/a R. Michael Martin & Associates ("the Martin Firm") being located there as well.  <u>Id.</u> at ¶¶5-6.  Plaintiff alleged that the amount in controversy exceeds $75,000.  <u>Id.</u> at ¶3; 28 U.S.C. § 1332.

---

[2] It is noted that two recent mailings by the Clerk with respect to defendants Hurley Randolph and Henrietta Maynard have been returned as undeliverable.  <u>See</u> ECF Nos. 76, 78.

Plaintiff originally filed the complaint on July 13, 2015, pursuant to the court's diversity jurisdiction under 28 U.S.C. § 1332, seeking recission or declaratory judgment, pursuant to 28 U.S.C. § 2201, of an insurance policy it issued. Compl., ECF No. 1 at ¶1.

At the outset, the complaint charges as follows:

> The questions to be decided are whether a professional liability policy issued to Defendants, [Mr. Martin], individually [], and [the Martin Firm] on August 21, 2014, may be rescinded and declared void ab initio due to material misrepresentations on renewal applications by Mr. Martin and/or the Martin Firm or, in the alternative, whether any coverage exists under the professional liability policy issued by [plaintiff] to Mr. Martin and the Martin Firm for numerous claims and/or potential claims by Defendants . . . .

> * * *

> The Martin Firm is insured under a Lawyers Professional Liability Policy issued by [plaintiff] for the period covering August 21, 2014, to August 21, 2015 ("Martin Policy").

Id. at ¶¶2, 8.

Plaintiff refers throughout the complaint to a prior policy it issued to Mr. Martin and the firm for the year 2013, see e.g. id. at ¶11, but plaintiff specifies in its complaint

that it seeks recission and a void ab initio determination as to
the 2014 Martin Policy.  Id. at ¶2.[3]

Alternatively, if the court determines the policy to
be enforceable, plaintiff asks the court to determine, in
reference to the 2014 Martin Policy, "whether any coverage
exists under the [Martin Policy] issued by [plaintiff] to Mr.
Martin and the Martin Firm for numerous claims and/or potential
claims by [d]efendants."  Compl. at ¶2; Motion for Summ. J. at
n.2.

The Martin Policy provided a liability limit of
$1,000,000.00 for each claim and $2,000,000.00 in the aggregate,
with a $5,000.00 per claim deductible, applicable to damages and
claim expenses as defined in the policy.  See Martin Policy, ECF
No. 74-2 at 1.

Mr. Martin indicated in the renewal application dated
August 21, 2014, by which he sought issuance of the 2014 Martin
Policy, that during the expiring 2013 policy period, 1) no
lawyers in his firm had disciplinary actions including

---

[3] The court notes that the 2014 Martin Policy was a reissuance of
the 2013 policy, and Mr. Martin's applications for both the 2013
and 2014 policies are included in the record.  See Lawyers
Professional Liability Renewal Application, August 5, 2013, ECF
No. 74-3; see also Lawyers Professional Liability Renewal
Application, August 21, 2014, ECF No. 74-4.  Plaintiff submitted
the 2014 Martin Policy as an exhibit with its motion.  ECF No.
74-2.  Plaintiff did not include a copy of the 2013 policy.

disbarment, reprimand, censure, or sanction, 2) no claims existed, 3) no incidents or circumstances existed that could result in a claim, 4) no changes in the status, amounts reserved and/or amounts paid for claims, incidents or circumstances which were open as of the inception of the expiring policy.  <u>See</u> Lawyers Professional Liability Renewal Application, August 21, 2014, ECF No. 74-4.

On his previous application for renewal, dated August 5, 2013, by which Mr. Martin sought the 2013 policy, he answered "no" to the same inquiries.  <u>See</u> Lawyers Professional Liability Renewal Application, August 5, 2013, ECF No. 74-3.

In fact, at the time Mr. Martin submitted his renewal application in August 2014, he had at least 23 disciplinary complaints filed against him, the first of which was filed on or about June 11, 2012.  <u>See</u> Statement of Charges, June 27, 2014, ECF No. 74-5.[4]

Two statements of charges were filed against plaintiff by the Lawyer Disciplinary Board, a branch of the Office of

---

[4] Plaintiff asserts in the memorandum in support of the motion that Mr. Martin surrendered his law license on January 14, 2015, was convicted by plea of embezzling more than $1 million from clients, and was sentenced to a term of imprisonment.  <u>See</u> Pl.'s Mem. Supp. at n.2 (citing J. Morris, <u>Former Attorney Who Embezzled More than $1 Million Sentenced to Prison</u>, (Apr. 30, 2025), https://wchstv.com/news/local/former-attorney-who-embezzled-more-than-1-million-sentenced-to-prison.)

Disciplinary Counsel which has authority from the Supreme Court of Appeals of West Virginia to pursue disciplinary action against lawyers facing allegations of violating the West Virginia Rules of Professional Conduct. See ECF Nos. 74-5, 74-6; see also Syl. Pt. 3, Comm. on Legal Ethics v. Blair, 174 W. Va. 494, 495 327 S.E.2d 671, 672 (1984)("[The West Virginia Supreme Court of Appeals] is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law.").

The first statement of charges, dated June 27, 2014, included ten counts and aggravating factors. ECF No. 74-5. The second statement of charges, dated October 15, 2014, included thirteen counts and aggravating factors. ECF No. 74-6.

The counts alleged in the first statement of charges beginning in 2012 and during the coverage of the 2013 policy described complaints filed with the West Virginia State Bar by former clients of Mr. Martin and the Martin Firm, and related in general to Mr. Martin's failure to pay settlement proceeds to his clients, failure to satisfy liens, failure to prosecute cases, and failure to finalize settlements. See ECF No. 74-5. The second set of charges against Mr. Martin filed with the West Virginia State Bar during the 2014 Martin Policy similarly

7

described complaints filed by former clients and included

similar allegations to the first, such as plaintiff's failure to

pay settlement proceeds and failure to prosecute, with new

allegations such as failure to communicate with clients and at

least one allegation of forgery of a settlement check.  <u>See</u> ECF

No. 74-6.

Both the 2013 and 2014 policy renewal applications

included the following declaration, which was both times signed

by Mr. Martin:

> The undersigned . . . hereby . . . declares after
> diligent inquiry that the above statements and
> particulars are true and that no material facts have
> been suppressed or misstated . . . this application
> will be the basis of the contract if a policy is
> issued . . . all written statements and material
> furnished to Liberty Insurance Underwriters, Inc. in
> conjunction with this application are hereby
> incorporated by reference into this application and
> made a part hereof; and . . . acknowledges that, in
> the event Liberty Insurance Underwriters, Inc. issues
> a policy, (1) Liberty Insurance Underwriters, Inc. in
> providing coverage will have relied upon, as
> representations, the declarations and statements which
> are contained in or attached to or incorporated into
> the policy . . . .

Lawyers Professional Liability Renewal Application, ECF Nos. 74-

2, 74-3.  Additionally, the 2014 Martin Policy excluded coverage

for "any judgment or final adjudication based upon, arising out

of or in any way related to any dishonest, fraudulent, criminal,

malicious or deliberately wrongful acts or omissions committed

8

by [the covered lawyer or firm]." <u>See</u> Martin Policy, August 26, 2014, ECF No. 1-1.

At some time, plaintiff learned about the disciplinary action against Mr. Martin. Plaintiff sent notice to Mr. Martin that it was rescinding the 2014 Martin Policy based on "misrepresentations and omissions in the application[ Mr. Martin] submitted," and plaintiff returned to Mr. Martin the $5,663.00 of premiums paid by him for the Martin Policy. <u>See</u> Letter from Jennifer Goldsmith, plaintiff's Assistant Vice President of Professional Liability Claims[5] for Liberty International Underwriters, to R. Michael Martin (July 7, 2015), ECF No. 1-5.

Also referencing the 2013 policy, Ms. Goldsmith stated in her letter explaining the recission and premium repayment of the 2014-2015 policy to Mr. Martin:

> Whether viewed as a disciplinary action, a claim, or incidents or circumstances that could result in a claim, each of the client complaints identified in the Disciplinary Proceeding should have been disclosed in the applications for the 2013-2014 Policy or the 2014-2015 Policy. They were not. Thus, these applications contained misrepresentations, omissions, concealments of facts, or incorrect statements. These

[5] Ms. Goldsmith is identified on the letter as plaintiff's Assistant Vice President of Professional Liability Claims. <u>Id.</u> In an Affidavit of Jennifer L. Goldsmith, attached as exhibit 8 to plaintiff's motion for summary judgment, ECF No. 74-8, Ms. Goldsmith identifies her title as Vice President of Financial Lines Claims for plaintiff.

misrepresentations, omissions, concealments of facts,
or incorrect statements were fraudulent.

Id. at 5.

## II. LEGAL STANDARD

A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(c). Material facts are
those necessary to establish the elements of a party's cause of
action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable
factfinder could return a verdict for the non-movant. Id. The
moving party has the burden of showing - "that is, pointing out
to the district court - that there is an absence of evidence to
support the nonmoving party's case." Celotex Corp. v. Catrett,
477 U.S. 317, 325 (1986). If the movant satisfies this burden,
then the non-movant must set forth specific facts as would be
admissible in evidence that demonstrate the existence of a
genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at

322-23.  A party is entitled to summary judgment if the record

as a whole could not lead a rational trier of fact to find in

favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823

(4th Cir. 1991).

### III. ANALYSIS

A. Effect of Bankruptcy Proceedings

Plaintiff represents that defendants Mary Gail

Hundley, Hurley Randolph, Robert Kardos, and Stephanie Kardos,

and intervenor Patricia L. Quinet, recovered in bankruptcy and

should be dismissed from the action; defendant Lucas Swisher has

been dismissed from the action; and defendant Stephen Perry has

not been served.  Motion for Summ. J., ECF No. 74, at n.1.

Defendant Shirley Grimmett was voluntarily dismissed by

stipulation.  <u>See</u> Stipulation of Partial Voluntary Dismissal,

ECF No. 68.  Defendant Jeannie Donnellan was dismissed from this

action pursuant to a joint stipulation of dismissal, filed

February 19, 2025.  <u>See</u> Stipulation of Dismissal of Defendant

Donnellan, ECF No. 77.[6]

---

[6] The remaining named defendants, other than Mr. Martin and his
firm, are not named in plaintiff's motion and are: Tiffany
Adkins, Tom Adkins, Roger D. Barker, Theresa Brown, Vicki
Martin-Rhodes, Henrietta Maynard, Brandy Pauley, Kathy Ramsey,
Sara Rogers, Susan M. Scott, and Florence Hudnall Stanley.

The nine defendants who are named in plaintiff's motion are claimants who were allegedly harmed by Mr. Martin's conduct in the course of his legal representation of them: Melody Maynard, Charles Adkins, James Vance, Leugenia Pannell, Bertha McCormick, Anthony I. McCorkle, Ashley J. Duncan, Charles Carrington, and Candace A. Carrington.  See Motion for Summ. J., ECF No. 74.  As explained above, inasmuch as Deonne Bowen was never made a party to this action, this order has no effect on any claims regarding Deonne Bowen.

B.    Mr. Martin, individually and on behalf of the firm, made material misrepresentations in his policy applications to plaintiff, rendering the policy void ab initio.

"It is well-settled in West Virginia that a misrepresentation of any fact which is material to the risk made by an applicant for insurance will avoid any policy issued pursuant thereto." Fed. Mutual Ins. Co. v. Deal, 239 F. Supp. 618, 621 (S.D.W. Va. 1965) (citing Christian v. State Farm Mut. Auto Ins. Co., 144 W. Va. 746 (1959).  Indeed, the West Virginia Legislature codified this rule in West Virginia Code Section 33-6-7:

All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts,

and incorrect statements shall not prevent a recovery
under the policy unless:

(a)   Fraudulent; or

(b)   Material either to the acceptance of the risk, or
to the hazard assumed by the insurer; or

(c)   The insurer in good faith would either not have
issued the policy, or would not have issued a policy
in as large an amount, or would not have provided
coverage with respect to the hazard resulting in the
loss, if the true facts had been made known to the
insurer as required either by the application for the
policy or otherwise.

W. Va. Code § 33-6-7 (1957).

The Supreme Court of Appeals of West Virginia has

noted that subsections (b) and (c) overlap inasmuch as

subsection (b) relates to misrepresentations that are material

to the acceptance of the risk or hazard assumed by the insurer,

and subsection (c) clarifies the test for whether a

misrepresentation is material.  See Powell v. Time Ins. Co., 181

W. Va. 289, 297 (1989).  Consequently, the Supreme Court of

Appeals of West Virginia held in Powell:

> [U]nder W. Va. Code, 33-6-7(b) and (c), in order for a
> misrepresentation to be material, it must relate to
> either the acceptance of the risk insured or to the
> hazards assumed by the insurer. Materiality is
> determined by whether the insurer in good faith would
> either not have issued the policy, or would not have
> issued a policy in as large an amount, or would not
> have provided coverage with respect to the hazard
> resulting in the loss, if the true facts had been made
> known to the insurer as required either by the

13

application for the policy or otherwise.

<u>Id.</u>

Though the question of materiality is generally a question for a jury, "if the evidence excludes every reasonable inference except that the misrepresentation was material, then the question of materiality becomes one of law for the court." <u>Id.</u> at 457.

The burden is on the insurer to prove by a preponderance of the evidence that the insurance applicant made a material misrepresentation under Code Section 33-6-7. <u>See</u> Syl. Pt. 7, <u>Powell</u>, at 344. To meet its burden, an insurer may offer an affidavit from one of its employees stating the insurer would not have issued the policy if the true facts had been known and present documentation concerning its underwriting practices. <u>See</u> <u>McDowell v. Allstate Vehicle & Prop. Ins. Co.</u>, 247 W. Va. 536, 545 (2022) (citing <u>Nationwide Prop. & Cas. Ins. Co. v. Brown</u>, 260 F. Supp. 3d 864, 872 (E.D. Mich. 2017); <u>Thandi v. Otsego Mut. Fire Ins. Co.</u>, 157 N.Y.S.3d 516, 518-19 (2021)).

Mr. Martin, as an individual and on behalf of the firm, was aware of the complaints against him insofar as he had filed verified answers to several of the complaints prior to his 2013 and 2014 renewal applications, and he received a demand

letter from a lawyer representing defendant Sara Rogers, dated July 23, 2013, asking Mr. Martin to "turn this demand over to your malpractice carrier."  See e.g., Letter from J. Patrick L. Stephens, Underwood Law Office, to R. Michael Martin, Esq. (July 23, 2013), ECF No. 1-4.[7]  Mr. Martin was aware of the falsity of his answers on his 2013 and 2014 renewal applications that 1) no lawyers in his firm had disciplinary actions including disbarment, reprimand, censure, or sanction, 2) no claims existed, 3) no incidents or circumstances existed that could result in a claim, 4) no changes in the status, amounts reserved and/or amounts paid for claims, incidents or circumstances which were open as of the inception of the expiring policy.  See Lawyers Professional Liability Renewal Application, August 21, 2014, ECF No. 74-4.

        Ms. Goldsmith explained in an affidavit on behalf of plaintiff that

> [b]ased upon [plaintiff]'s underwriting policies and procedures, the existence of disciplinary actions, claims, or incidents that could result in a claim is essential information necessary to determine whether or not a Lawyers Professional Liability Insurance policy should be issued, should be issued in as large an amount as it was, or should provide coverage for

---

[7] The exact date Mr. Martin received the letter from Underwood Law Office is unclear, but the letter was sent via certified mail to the address listed for Mr. Martin's law firm.  See id. Based on these facts, the court concludes that Mr. Martin and his firm received the letter on or about July 23, 2013.

the hazard giving rise to claims or potential claims
made against it.

Affidavit of Jennifer L. Goldsmith, ECF No. 74-8 at ¶ 5.  Ms.
Goldsmith continued, "[b]ut for the misrepresentations,
omissions, concealments of facts, or incorrect statements made"
by Mr. Martin, plaintiff would not have issued the 2014-2015
insurance policy to the firm, would not have issued the policy
with the limits issued, and would not have provided coverage for
any matters relating to the firm's handling of client funds.
Id. at ¶ 6.

        The policy included a provision indicating that the
personal representations made by the applicant, Mr. Martin, were
material to the contract and that the policy, if issued, was
done so in reliance upon those representations.  See Policy, ECF
No. 74-2 at 14.  The provision stated:

        By acceptance of this policy, you agree that the
        statements in the application are personal
        representations, that they shall be deemed material
        and that this policy is issued in reliance upon such
        representations and that this policy embodies all
        agreements existing between you and us, or any of our
        agents, relating to this insurance.

Id.  Mr. Martin was thereby on notice that his false statements
in his renewal applications amounted to a material breach of the
contract.

Inasmuch as the plaintiff has demonstrated that Mr. Martin's misrepresentations in both the 2013-2014 and 2014-2015 renewal applications were material, and such materiality is undisputed, the court deems them material as a matter of law.

Accordingly, the 2014-2015 policy, which was reissued after expiration of the 2013-2014 policy in reliance on Mr. Martin's material misrepresentations, is void <u>ab initio</u> and is rescinded insofar as it relates to Melody Maynard, Charles Adkins, James Vance, Leugenia Pannell, Bertha McCormick, Anthony I. McCorkle, Ashley J. Duncan, Charles Carrington, and Candace A. Carrington.

### C. <u>Policy Defenses</u>

Plaintiff argues in the alternative that, if the court determines that the policy is enforceable, that coverage in unavailable due to numerous policy defenses. <u>See</u> Motion for Summ. J. at n.2; Pl.'s Mem. Supp at 19.

Inasmuch as the motion for summary judgment does not seek relief beyond recission if the court finds the Martin Policy is void <u>ab initio</u>, at least as to the nine defendants named in the motion, the court need not make the alternate findings otherwise sought by the plaintiff.

17

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment as to the nine defendants named therein, being Melody Maynard, Charles Adkins, James Vance, Leugenia Pannell, Bertha McCormick, Anthony I. McCorkle, Ashley J. Duncan, Charles Carrington, and Candace A. Carrington, is GRANTED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: May 5, 2025

John T. Copenhaver, Jr.
Senior United States District Judge